THE STATE OF MISSOURI, AT THE INFORMATION OF WM. F. BLOEBAUM, PROSECUTING ATTORNEY OF ST. CHARLES COUNTY, MISSOURI, RELATOR, v. HENRY BROEKER, RESPONDENT.*—11 S. W. (2d.) 81.

St. Louis Court of Appeals. Opinion filed November 6, 1928.

*Corpus Juris-Cyc. References: Licenses, 37CJ, section 6, p. 169, n. 43; p. 170, n. 44, 47; section 8, p. 171, n. 54; section 25, p. 182, n. 5; Municipal Corporations, 43CJ, section 1016, p. 623, n. 27; Statutes, 36Cyc, p. 1106, n. 29; p. 1128, n. 55; p. 1131, n. 75; p. 1151, n. 47.

*Wm. F. Bloebaum,* Prosecuting Attorney of St. Charles County, Missouri, *Wm. F. Achelpohl* and *Wm. Waye, Jr.,* for appellant.

834

*Osmund Haenssler, Theodore C. Bruere, Hensley, Allen & Marsalek* and *William H. Allen* for respondent.

BENNICK, C.—This is a proceeding by *quo warranto,* instituted at the information of the Prosecuting Attorney of St. Charles county, in his official capacity, against Henry Broeker, as respondent, having

for its purpose the ouster of the latter from the office of mayor of the city of St. Charles, a city of the third class. After a hearing upon an agreed statement of facts, the court rendered its judgment, denying the writ, from which relator has duly appealed.

Without particular regard to the contents of the several pleadings in the case, all of which are in conventional form, it will suffice to say that the controversy between the parties centers wholly around the effect to be given that portion of section 8230, Revised Statutes 1919, applicable to cities of the third class, providing that "no person shall be elected or appointed to any office who shall at the time be in arrears for any unpaid city taxes, or forfeiture or defalcation in office." It appears from the agreed statement of facts that respondent, in private life, was engaged in business as a painting and paper-hanging contractor, in the city of St. Charles; that such city, under the authority conferred upon it as a city of the third class by section 8322, Revised Statutes 1919, had enacted Ordinance No. 881, which was in force from October 1, 1920, to the date of respondent's election; that section 24 of said ordinance provided that painting and paper-hanging contractors should pay a "license tax" to the city, in the sum of ten dollars a year; and that, from the time of the enactment of such ordinance, to the date of his election, on April 5, 1927, respondent had not paid such license fee or tax, save for the period from October 1, 1924, to September 30, 1925.

So far as the issues on this appeal are concerned, that respondent possessed all qualifications for his office, other than the one in dispute, stands admitted. The sole question before this court, therefore, is whether the failure of respondent, prior to his election, to have procured and paid for a license as a painting and paper-hanging contractor for certain years, rendered him ineligible to hold a municipal office in a city of the third class, under the provision of section 8230, Revised Statutes 1919, to which reference has heretofore been made, disqualifying one for office who, at the time of his election, is "in arrears for any unpaid city taxes."

Whether or not a sum imposed in a given instance is a license fee proper, or a tax in the true sense of the word, is a question often difficult of determination, in consequence of which it has frequently happened that the distinction between the two has been disregarded, both in the decisions and in the statutes. Properly speaking, however, and as generally understood, there is a clear differentiation to be made between a license granted by municipal authorities as a condition precedent to the carrying on of a prescribed occupation or business and a tax assessed against the occupation or business in which a person may be authorized, by the grant of a license, to engage.

The true distinction between a license fee and a tax proper seems to depend primarily upon the purpose of the exactment, and upon whether it is imposed pursuant to the police power, or under the tax-

ing power vested in the municipality. In other words, if the fee is exacted for the prime purpose of enabling the municipal authorities to regulate or restrain an occupation or privilege dangerous to the public, or of a nature to be specifically in need of official supervision, and if compliance on the part of the licensee with certain prescribed conditions is required in addition to the payment of the designated sum, such fee is a license fee proper, imposed in the exercise of the city's police power, and is not, in strictness, an ordinary tax, as the term is commonly understood. On the other hand, where the fee is exacted primarily for revenue purposes, and payment of the fee confers the right upon the licensee to pursue his business or occupation without the performance of any additional conditions, it is not properly a license fee, even though so denominated, but is actually a tax, imposed under the general power of taxation. [Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700; 37 C. J. 169, et seq.]

In the case under consideration, the power of the city of St. Charles to have enacted the particular ordinance out of which this controversy has grown was derived solely from section 8322, Revised Statutes 1919 (since repealed, and a new section enacted), which empowered the councils of cities of the third class "to levy and collect a license tax" on those engaged in numerous occupations and callings, including painting and paper-hanging contractors, although it will be observed as a fact of particular significance that the statute afforded the city no right of regulation over such occupations. Since, in the concluding portions of the statute, the lawmakers saw fit to grant specific authority to cities to regulate certain designated businesses, the obvious result is that power of regulation over those businesses not so specified was necessarily excluded. *Expressio unius est exclusio alterius.* Consequently, if the general distinction heretofore noted is to be applied, the fees due the city from respondent under Ordinance No. 881 must have been exacted for the purpose of obtaining revenue, and not to cover the cost of regulation of respondent's business, for which there was no statutory authority, as we have pointed out, even if regulation had been attempted, of which there is no evidence.

But, conceding the above, and granting that the imposition of license taxes comes within the purview of the constitutional provision which requires taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the same, it by no means conclusively follows that the Legislature, in providing in section 8230, Revised Statutes 1919, that one should be disqualified for holding a municipal office who, at the time of his election, was "in arrears for any unpaid city taxes," necessarily intended by the term "city taxes" to include license fees, such as those for the payment of which respondent was in default, even though the same were paid into the general revenue fund when collected.

It is well understood that the object of all rational construction of statutory enactment is to seek out and effectuate the purpose and intent of the lawmaking body in enacting the same; that such intent is to be determined from a general view of the entire act with reference to the subject-matter to which it applies; and that sections of the same act, relating to the same general subject, and enacted at the same time, must be read and construed together in interpreting the act and parts thereof. [State ex rel. v. Davis, 314 Mo. 373, 284 S. W. 464; Palmer v. Omer, 316 Mo. 1188, 295 S. W. 123; Betz v. Kansas City Southern Ry. Co., 314 Mo. 390, 284 S. W. 455; Consolidated School District v. Hackmann, 302 Mo. 558, 258 S. W. 1011.]

In this connection we are mindful of the fact that all of the statutes to which we have heretofore referred, or shall make subsequent reference, were enacted contemporaneously at the regular legislative session of 1893; and, consequently, they must be read and considered together in the construction of whatever doubtful or ambiguous language may be found to exist in any particular section. Our task, therefore, is to determine whether the Legislature has elsewhere given any definition of the term "city taxes," so as to throw light upon the use of the expression in section 8230, Revised Statutes 1919, that is, in regard to whether it intended the words "city taxes" to be synonymous with "property taxes," as respondent suggests, or also to comprehend and include therewith the license taxes provided for in other portions of the act, as relator would have us believe.

At the outset we are impressed with the fact that the Legislature, in section 8273, Revised Statutes 1919, defined the term "taxes" as at least not including "licenses," when it provided that the city council should provide by ordinance "for the levy and collection of all taxes, licenses, etc." Furthermore, it recognized throughout the act that "taxes," as commonly understood, were certain, and that payment of the same could not be escaped by one owning property subject to taxation; while "licenses," to the contrary, were merely to be regulated by ordinance, and no license should be issued until the amount prescribed therefor should have been paid to the city collector. [Section 8278, R. S. 1919.] But most persuasive of all are sections 8267, 8268, Revised Statutes 1919, providing that, upon a designated date, all unpaid "city taxes" shall become delinquent, and subject to collection, and speaking of, and defining, such taxes as those specifically levied upon real and personal property, and as corresponding to State and county taxes. Consequently, without further discussion, we conclude that the only reasonable view to be taken of the matter at hand is that the Legislature, in section 8230, Revised Statutes 1919, prescribing the qualifications for office, used the term "city taxes" in the same sense as in sections 8267, 8268, Revised Statutes 1919, that is, as ordinary property taxes, and did not intend

to include license taxes therein, for the imposition and collection of which separate provision was made in the course of the act.

In the light of the conclusion so reached, it follows that the judgment of the lower court was for the right party, and should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.