CITY OF WELLSTON, Missouri, and
City of Winchester, Missouri,
Appellants,

v.

SBC COMMUNICATIONS, INC.,
et al., Respondents.

No. SC 87207.

Supreme Court of Missouri,
En Banc.

Aug. 8, 2006.

As Modified on Denial of Rehearing
Oct. 31, 2006.

John F. Medler, Jr., Suzanne L. Montgomery, Stephen B. Higgins, Ann Ahrens Beck, Amanda J. Hettinger, Sharon B. Rosenberg, Thompson Coburn LLP, St. Louis, for respondents.

Robert L. King, for Amicus Curiae National Association for Consumer Advocates, The Foundation for Taxpayer and Consumer Rights, National League of Cities, The International Municipal Lawyers Association, The National Association of Telecommunications Officers and Advisors, Citizens for Tax Justice, Missouri Chapter of the National Association of Telecommunications Officers and Advisors.

Erwin O. Switzer, III, St. Louis, for Amicus Curiae National Conference of State Legislators.

STITH, Judge.

This is one of four companion cases decided on this date. Each case involves claims that the "Municipal Telecommunications Business License Tax Simplification Act" ("Act")[1] unconstitutionally regulates and prohibits collection by municipalities of business license taxes on telecommunication companies for wireless or long-distance service already provided by those companies before the law was enacted.

Unlike its three companion cases,[2] this case requires that before reaching the constitutionality of the Act this Court must determine whether plaintiffs, the cities of Wellston and Winchester ("the Cities"), have standing to bring this action in their own names or whether, as respondents allege, they were required to sue in the name of the state. The trial court held

Stephen M. Tillery, Steven A. Katz, Douglas R. Sprong, John W. Hoffman, Howard Paperner, St. Louis, John F. Mulligan, Jr., Clayton, for Appellants.

---

1. Secs. 92.074 to 92.095, RSMo Supp.2005. The Act was passed as a section of H.B. 209, 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005); 2005 Mo. Laws 429.

2. The three companion cases are: *City of Springfield v. Sprint Spectrum, L.P.,* 203 S.W.3d 177 (Mo. banc 2006); *City of St. Louis v. Sprint Spectrum, L.P.,* 203 S.W.3d 199, 2006 WL 2256882 (Mo. banc 2006); and *City of University City, Missouri, et al. v. AT & T Wireless Servs., Inc., et al.,* 203 S.W.3d 197, 2006 WL 2257066 (Mo. banc 2006).

that sections 94.150 and 94.310, RSMo 2000,[3] require that suits for "city taxes" be brought in the name of the state by third-class and fourth-class cities such as Wellston and Winchester and that their failure to do so deprived them of standing.

The trial court erred in holding that section 94.310 requires fourth-class cities to bring suit in the name of the state. It contains no such requirement. While section 94.150 does require third-class cities to sue for "city taxes" in the name of the state, failure to do so may be corrected by amendment and does not deprive the plaintiff of standing. Moreover, the license taxes sought by the Cities are not "city taxes" as that term is used in section 94.150, and so, Wellston could sue in its own name. This Court, therefore, may reach the Cities' constitutional challenges to the Act. This Court's analysis of those issues in *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 2006 WL 2257073 (Mo. banc 2006), is fully applicable here. For the reasons set out in that opinion, sections 92.074 to 92.089, RSMo Supp.2005, are invalid.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Cities have imposed gross receipts business license taxes on providers of long-distance telephone service, including respondents and others (hereinafter collectively referred to as "SBC"). The tax is imposed by Winchester pursuant to an ordinance stating:

Pursuant to the laws of Missouri, every firm, person or corporation now or hereafter engaged in the business of supplying or furnishing telephone or telephone service in the City of Winchester, Missouri, shall pay to the said City as a license or occupational tax six per cent (6%) of the gross receipts derived from such business within the said City.

City of Winchester, sec. 640.010 (Ordinance 253 s-l). The tax is imposed by Wellston pursuant to an ordinance stating:

Every person engaged in the business of furnishing exchange telephone service in the city shall pay the city, as a license or occupational tax five (5) percent of the gross receipts derived from such business with the city.

City of Wellston, sec. 13–131 (Code 1980 SS 14–71).

The Cities claimed SBC refused to file required statements and had not paid the gross receipt taxes, interest and penalties required under the ordinance. Therefore, seeking to enforce the application of their tax to the long-distance service SBC had already supplied to its customers, the Cities filed suit in the circuit court of St. Louis City in late December 2004.[4] SBC countered that the Cities had no right to sue in their own names, but rather that under sections 94.150 and 94.310 suit had to be brought in the name of the state for the use and benefit of the city collector. The trial court dismissed the Cities' suit on this basis in August 2005. The Cities appeal.

## II. RIGHT OF THIRD AND FOURTH-CLASS CITIES TO SUE IN OWN NAME

### A. SBC's Contentions.

---

3. All statutory citations are to RSMo 2000, unless otherwise specified.

4. The case was initially removed to federal court but eventually was remanded due to insufficiency of the amount in controversy and lack of subject matter jurisdiction. *City of Wellston v. SBC Commc'ns, Inc.*, No. 4:05CV234 CDP (E.D.Mo. May 25, 2005).

SBC bases its argument that Wellston has no right to sue in its own name on section 94.150, which applies to collection of taxes by third-class cities and states:

The enforcement of all taxes authorized by sections 94.010 to 94.180 shall be made in the same manner and under the same rules and regulations as are or may be provided by law for the collection and enforcement of the payment of state and county taxes, including the seizure and sale of goods and chattels, both before and after said taxes shall become delinquent; *provided, that all suits for the collection of city taxes shall be brought in the name of the state, at the relation and to the use of the city collector.*

Sec. 94.150 (emphasis added). SBC argues that, as Wellston is a third-class city, and as this suit is for taxes, Wellston erred in bringing suit in its own name. SBC acknowledges that cases decided many decades ago may not have included license taxes within the definition of "city taxes" but argues that the statutes now treat all taxes imposed by a city in the same manner and all should be considered "city taxes." It further argues that failure to sue in the name of the state deprives Wellston of standing and that the trial court properly dismissed its suit. *See, e.g., Sauter v. Schnuck Markets, Inc.,* 803 S.W.2d 54, 55 (Mo.App. E.D.1991) (standing to sue cannot be waived).

█ SBC similarly argues that the City of Winchester, a fourth-class city, was required to bring suit in the name of the state under section 94.310, which states:

The enforcement of all taxes authorized by sections 94.190 to 94.330 shall be made in the same manner as is provided by law for the collection and enforcement of the payment of state and county taxes, including the seizure and sale of goods and chattels after the taxes become delinquent. Where applicable in chapter 140, RSMo, the term "county" shall be construed "city", the term "county clerk" shall be construed "city clerk", and the term "county collector" shall be construed "city collector" or other proper officer collecting taxes in the city.

Sec. 94.310. SBC concedes that, unlike section 94.150, section 94.310 does not contain a concluding proviso requiring that suits for "city taxes" filed by fourth-class cities must be brought in the name of the state. But, SBC argues and the court below held, there is "no logical reason" to treat fourth-class cities differently.

*B. Fourth–Class Cities Are Not Required to Sue in the Name of the State.*

█ It is not up to this Court to determine which legislative scheme for suits by municipalities is most logical. This Court must enforce statutes as written, not as they might have been written.[5] Section 94.150 states that suits by third-class cities must be brought in the name of the state at the relation and to the use of the city collector. Section 94.310 does not contain this requirement for fourth-class cities, although it otherwise generally tracks the language of section 94.150. This Court cannot add language to the statute that the legislature did not include.[6] The legislature did not include in

---

5. *State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002) (courts lack authority "to read into a statute a legislative intent that is contrary to its plain and ordinary meaning"); *Kearney Special Rd. Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993) (with-

out ambiguity, statutory construction is unacceptable "even when a court may prefer a policy different from that enunciated by the legislature").

6. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 262 (Mo. banc 1998) ("rules of statutory con-

section 94.310 the requirement that suit for "city taxes" be brought in the name of the state.

A review of the history of section 94.310 reveals that this omission was intentional. From at least 1895 until 1959, the predecessors to section 94.310 did require that suits by fourth-class cities be brought in the name of the state.[7] In 1961, however, the legislature specifically repealed the 1959 version of section 94.310 and readopted it in substantially similar terms *except* the legislature specifically *deleted* the phrase that had previously required fourth-class cities to sue in the name of the state for the use and to the benefit of the city collector. 1961 Mo. Laws 220. The current statute is identical to that adopted in 1961. Sec. 94.310.

For these reasons, the trial court erred in holding that Winchester was required to bring suit in the name of the state at the relation and to the use of the city collector.

*C. Wellston Not Required to Sue for License Taxes in Name of State.*

This Court also disagrees with the trial court's conclusion that Wellston, a third-class city, had no standing to sue in its own name for unpaid business license taxes.

**1. Standing.**

 First, the trial court was incorrect that failure to bring suit in the name of the state goes to Wellston's standing to sue. The alleged error is not one of standing but of whether the city had the *capacity to sue* in its own name or should have brought suit in the name of the state at the relation and for the use of the city collector:

> Capacity to sue refers to the status of a person or group as an entity that can sue or be sued, and is not dependent on the character of the specific claim alleged in the lawsuit. . . .
>
> Standing to sue evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit. It is a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court . . . Objections to standing, unlike objections based on the real party in interest rule, cannot be waived . . .

15 Mo. Prac. *Civil Rules Practice* sec. 52.01–2 (Mary Coffey ed., 2d ed.1997) (footnote omitted).

Missouri courts on multiple occasions have treated errors in bringing a claim directly rather than in the name of another party, or similar defects, as issues of capacity rather than standing, which may be waived or avoided by amendment of the pleadings. In *Bank of Oak Ridge v. Duncan*, 328 Mo. 182, 40 S.W.2d 656 (1931), a bank brought suit on a fidelity bond for fraud committed by a bank employee. This Court found suit should have been brought "in the name of the Bank of Oak Ridge by the [state's] [c]ommissioner of [f]inance who is entitled to receive, control and administer the proceeds of the judgment," *id.* at 660, but because the finance commissioner knew of the suit and there was merit to the claim, this Court amend-

---

struction require every word of a legislative enactment be given meaning"); *Clark v. Kansas City, St. L. & C.R. Co.*, 219 Mo. 524, 118 S.W. 40, 44 (1909) ("Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the [l]egislature and unmistakably expressed in legislative words").

**7.** *Compare* 1895 Mo. Laws 74, sec. 49 ("[p]rovided that all suits for the collection of city taxes shall be brought in the name of the state, at the relation and to the use of the city collector"), *with* sec. 5942, RSMo 1899; sec. 9348, RSMo 1909; sec. 8446, RSMo 1919; sec. 6995, RSMo 1929; sec. 7145, RSMo 1939; sec. 94.310, RSMo 1959 (same).

ed the pleadings to conform them to the requirement that suit be brought in the name of the commissioner. *Id.* at 661.

Similarly, in *Board of Public Works of Rolla v. Sho–Me Power Corp.*, 362 Mo. 730, 244 S.W.2d 55 (1951), this Court held that the suit over a contract to purchase electricity for a municipal electric system should have been brought in the name of the city, rather than in the name of its board of public works, because the city was the real party in interest. But, because the case had been fully tried before the real party in interest issue was raised, dismissal would result in needless hardship. If the city adopted the pleadings of the board of public works, then the pleadings would be considered amended to conform to the evidence. *Id.* at 62.

More recently, in *State ex rel. Mather v. Carnes*, 551 S.W.2d 272 (Mo.App.K.C. 1977), *overruled in part on other grounds, Hensel v. Am. Air Network, Inc.*, 189 S.W.3d 582 (Mo. banc 2006), the issue was whether "plaintiff, by failure to bring the action in the name of the State, did not comply with the mandate of section 522.020 RSMo 1969, that any person who is authorized to prosecute a suit to his own use on any official bond *shall sue in the name of the state.*" *Id.* at 290. *Mather* held plaintiff erred in not bringing suit in the name of the state, but that this failure was not fatal to the suit, which had been brought in the name of the real party in interest. "The failure to join the state in this nominal status in the proceeding to the use of the injured person was a defect in party-plaintiff and subject to correction by the extant rules of pleading." *Id.* at 291.[8]

Rule 52.06 clearly permits substitution of the proper party plaintiff where suit has been brought in the wrong name, whenever the issue becomes known:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just. . . .

*Id.* Rule 52.06 reflects Missouri's policy that, absent a showing of bad faith or prejudice in failing to sue in the name of the proper party, "[t]he law in Missouri for nearly a century is [that] a new action is not commenced by substituting the party having the legal right to sue instead of another party improperly named." [9]

8. *Accord, State ex rel. Jones v. Mallinckrodt Chem. Works*, 249 Mo. 702, 156 S.W. 967, 973–74 (1913) (objection to failure of city attorney to sue in name of state on issue of revocation of corporate charter waived by failure to raise it in answer); *Cornejo v. Crawford County*, 153 S.W.3d 898, 901 (Mo.App. S.D.2005).

9. *Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 433–34 (Mo.App. W.D.2003) (in light of Rule 55.33(a)'s mandate that leave to amend *"shall be freely given when justice so requires,"* court's refusal to allow amendment to bring suit in name of the bankruptcy trustee rather than that of injured party was an abuse of discretion), *quoting, Union Ctr. Redevelopment Corp. v. Leslie*, 733 S.W.2d 6, 8 (Mo.App. E.D.1987) (trial court properly allowed amendment of pleading to substitute proper party-plaintiff where suit brought in individual name rather than in name of redevelopment corporation, but allegations otherwise were unchanged).

Moreover, as noted in *Mather*, 551 S.W.2d at 290–91, when brought in the "state ex rel." form, the state is merely a nominal party and is not added as an actual party in the usual case. *See also* 15 Mo. Prac. *Civil Rules Practice* sec. 52.01–8 (Mary Coffey ed., 2d ed. 1997) ("Rule 52.01 provides that, when authorized in statute, an action for the use or benefit of another is brought in the name of the State of Missouri. . . . The State, however, is not a party to the action unless the officer authorized by law [himself] files the suit in the name of the State of Missouri. That officer is the Attorney General, unless a statute spe-

For these reasons, even assuming the term "city taxes" includes license taxes, so that Wellston should have brought suit in the name of the state, the trial court erred in believing that this error could not be cured by amendment. This Court, thus, must determine whether the license taxes at issue are "city taxes" under section 94.150.

## 2. The Statutory Term "City Taxes" Does Not Include License Taxes.

■ There is logical appeal to SBC's argument that the business license taxes at issue are a form of "city taxes," as that term is used in section 94.150 requiring third-class cities to sue in the name of the state to recover "city taxes," because Wellston is a city and it is seeking to collect a tax. But, when read *in pari materia* with surrounding statutes and in light of this Court's prior cases interpreting the statute, it is evident that the legislature did not intend that business license taxes be included in the term "city taxes."

The predecessor to section 94.150 was first enacted by the Laws of 1893. It repealed prior law and provided that for cities of the third class "enforcement of *all taxes* authorized by this act shall be made in the same manner and under the same rules and regulations as are or may be provided by law for the collection and enforcement of the payment of state and county taxes," 1893 Mo. Laws 76, sec. 62, and also that "all suits for the collection of *city taxes* shall be brought in the name of the state, at the relation and to the use of the city collector." *Id.* (emphasis added). The act did not define "city taxes."

From 1899 until 1949, the wording of the statute remained practically identical. *See* sec. 5812, RSMo 1899. In 1949, the entire body of general statutes was renumbered pursuant to the Missouri Constitution, art. III, sec. 34, and, for the purpose of categorizing and organization, the 1893 law was divided into two sections; the current numbers of those two sections are section 94.150 ("Enforcement of taxes—how suits brought") and 94.160 ("City taxes delinquent, when—lien for taxes").[10] The language of particular interest here is that contained in section 94.150. As in 1893, it provides that all taxes authorized by the chapter are to be collected in the manner provided for the collection of state and county taxes and concludes with a proviso stating "provided, that all suits for the collection of city taxes shall be brought in the name of the state, at the relation and to the use of the city collector." Sec. 94.150. Now, as then, the statute fails to define the term "city taxes."

■ The ambiguity created by omission of a definition of "city taxes" has led to the present controversy as to what taxes are comprehended within that term. Contrary to SBC's argument, however, there is no ambiguity about the fact that the term clearly *does not* refer to *all* taxes permitted under sections 94.010 to 94.180. This is evident from the fact that section 94.150 provides in its first sentence that *"all taxes authorized by sections 94.010 to 94.180* shall be" enforced "in the same manner and under the same rules and regulations as are or may be provided by law for the collection and enforcement of the payment of state and county taxes...". *Id.* (emphasis added). But, it then pro-

cifically names some other officer who may bring suit").

10. The only change until 1949 was use of the word "article" rather than "act." *Compare* 1893 Mo. Laws 76, sec. 62, *with* sec. 5812,

RSMo 1899; sec. 9204, RSMo 1909; sec. 8267, RSMo 1919; sec. 6780, RSMo 1929; sec. 6926, RSMo 1939; secs. 94.150, 94.160 RSMo 1949.

vides in its final sentence that "city taxes," not "all taxes," are to be collected in the name of the state. *Id.* Where the legislature uses two different terms in the same statute, it must be presumed that it intended the terms to be given different meanings. *Ex parte Andrews,* 223 Mo. App. 858, 18 S.W.2d 580, 582 (Mo.App. Springfield 1929). *See also Eminence R–1 Sch. Dist. v. Hodge,* 635 S.W.2d 10, 13–14 (Mo. banc 1982). As the statute only requires "city taxes," not all taxes, be collected in the name of the state, it follows that it does not require other taxes to be collected in the name of the state. The true question is: do business license taxes fall within the term "city taxes"?

That question was answered in *State ex rel. Bloebaum v. Broeker,* 222 Mo.App. 831, 11 S.W.2d 81 (Mo.App. St.L. 1928), which was a *quo warranto* proceeding for the ouster of the mayor of the city of St. Charles for breach of a statute requiring that "no person shall be elected or appointed to any office who shall at the time be in arrears for any unpaid city taxes...". *Id.* at 82, *quoting,* sec. 8230, RSMo 1919. The mayor had paid all his property taxes, but had not paid a $10 business license tax imposed on his business. The issue for the court was whether a license tax is a "city tax." If so, the mayor would be ousted from office; if not, he could remain. The court held a license tax is not a city tax.

After noting the difference between taxes and licenses, *Broeker* held that assuming that a tax was at issue, reading section 8230 *in pari materia* with sections 8267 and 8268, RSMo 1919, made it clear that the term "city tax" was intended to apply only to property taxes. *Id.* at 83. Section 8267 (as section 94.150 was numbered in 1919) provided that on the first day of each year "all unpaid *city taxes* shall become delinquent." *Id.* (emphasis added). And, as it does now, the statute required that

unpaid "city taxes" be sued for in the name of the state "at the relation and to the use of the city collector." *Id.* Section 8268 required the collector to make lists of these delinquent taxes, one list known as "the land and lot delinquent list" and the other as the "personal delinquent list" and again said that all suits for collection of delinquent taxes must be in the name of the state. *Broeker* held that because these sections provided that:

> [U]pon a designated date, all unpaid 'city taxes' shall become delinquent, and subject to collection, and speaking of, and defining, such taxes as those specifically levied upon real and personal property, and as corresponding to [s]tate and county taxes. Consequently, ... the Legislature ... used the term 'city taxes' in the same sense as in sections 8267, 8268, [R.S.] 1919, that is, as ordinary property taxes, and did not intend to include license taxes therein ...

*Broeker,* 11 S.W.2d at 83.

Section 94.160 is the section number currently given to the first portion of section 8267. It still provides that on the first day of January of each year, "all unpaid city taxes shall become delinquent ...". Sec. 94.160. Section 94.170 is the section number currently given to section 8268. It still provides that the collector shall make two delinquent lists, "the land and lot delinquent list" and "the personal delinquent list." *Compare* sec. 8268, RSMo 1919, *with* sec. 94.170. As in *Broeker,* reading these statutes *in pari materia* with section 94.150, it is evident that the legislature "used the term 'city taxes' ... as ordinary property taxes and did not intend to include license taxes therein." 11 S.W.2d at 83.

For these reasons, the trial court erred in holding that Wellston and Winchester were required to bring suit for unpaid business license taxes in the name of the

state. They have standing to raise the issue of the constitutionality of sections 92.074 to 92.095 RSMo Supp.2005, and sued in the proper capacity.

## III. CONSTITUTIONALITY OF SECTIONS 92.074 TO 92.095

The issues presented concerning the constitutionality of sections 92.074 to 92.095, RSMo Supp.2005, as applied to SBC's long-distance service are substantially the same as those in *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177, 2006 WL 2257073 (Mo. banc 2006), in which Springfield similarly claimed that the trial court had erred in dismissing its suit for unpaid license taxes based on a claim that wireless service is not telephone service and that liability for wireless service taxes has been eliminated by the Act. This Court's holding in *City of Springfield* that sections 92.074 to 92.089, RSMo Supp. 2005, are invalid because section 92.086.10 is a special law in violation of the Missouri Constitution, art. III, sec. 40(30), applies equally here.

## IV. CONCLUSION

The judgment is reversed, and the cause is remanded.

WOLFF, C.J., TEITELMAN, LIMBAUGH and WHITE, JJ., and BAKER and HOLLIGER, Sp.JJ., concur.

PRICE and RUSSELL, JJ., not participating.