IN THEIR REPRESENTATIVE CAPACITY AS TRUSTEES FOR the INDIAN SPRINGS OWNERS Association, Appellant,

v.

**Todd and Deanna GREEVES, Respondents.**

No. ED 91057.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 10, 2009.

---

5. We need not reach the court's further ruling that such claim was time-barred.

Martin L. Daesch, Katherine M. Massa, Saint Louis, MO, for Appellant.

Todd E. Greeves, Deanna Greeve, O'Fallon, pro se.

## *OPINION*

GLENN A. NORTON, Judge.

The Indian Springs Owners Association ("the Association"), an unincorporated property owners association for the Indian Springs Subdivision,[1] appeals from the judgment dismissing its petition against Todd and Deanna Greeves ("Homeowners") on the grounds that the Association did not have standing.[2] The Association's two-count petition alleged that Homeowners violated the Indian Springs Subdivision's Indenture and Covenants and Restrictions ("the Indenture") by erecting a shed on their property without seeking or obtaining the Subdivision Trustees' approval. In Count I, the Association sought an injunction against Homeowners that would require them to remove the shed and submit their plan to erect a shed to the Trustees for review. In Count II, the Association requested an award of attorney's fees. The trial court found that the Association did not have standing because its representative parties, the Trustees, were in violation of the Indenture due to their failure to hold trustee elections in 2005, 2006, and 2007. We reverse and remand.

## I. BACKGROUND

The Indenture has regulated the relationships of homeowners in the Indian Springs Subdivision since 1997. It provides that "[e]ach person or entity who is a record owner in fee of any lot or living unit

---

1. The Association designated the Subdivision Trustees as its representative parties in this action under Missouri Supreme Court Rule 52.10 (2008). *See Lake Arrowhead Property Owners Association v. Bagwell,* 100 S.W.3d 840, 843 (Mo.App. W.D.2003) (stating that an unincorporated property owners association may sue another party by designating certain members, such as trustees, as representative parties in an action under Rule 52.10).

2. We note that Homeowners have not filed a Respondents' brief.

in Indian Springs shall be a member of the Association." The purpose of the Association and the Indenture is:

> [T]o create a means of cooperation among lot and homeowners in [Indian Springs] ... for the establishment of a ... common interest ...; to ensure the attractiveness of the development and to preserve, protect and enhance the values and amenities of said properties by the adoption of a ... set of restrictions to govern said property....

The Association's Board of Trustees consists of three "duly elected trustees of Indian Springs authorized to conduct business of the Association in accordance with [the Indenture]." The Indenture requires that trustee elections be held annually.

The Indenture also establishes covenants, conditions, and restrictions which apply to all homes in Indian Springs. One restriction in the Indenture provides in relevant part that:

> No building ... or other structure shall be ... erected ... upon any lot ... until the plans and specific actions showing the nature, kind, shape, height, materials and location of the same shall have been submitted to and approved in writing by the trustees.

The Indenture also states:

> The Trustees, or the owner of any lot subject to this Indenture, shall have the right to enforce, by and proceeding [sic] at law or in equity, any of the covenants, conditions, restrictions and provisions hereof, either to restrain or enjoin a violation or threatened violation or to recover damages and the prevailing party in either such action shall recover attorney's fees and court costs.

In April 2007, the Association filed a two-count petition against Homeowners, alleging they violated the Indenture by erecting a shed on their property without seeking or obtaining the Trustees' approval. In Count I, the Association sought an injunction against Homeowners that would require them to remove the shed and submit their plan to erect a shed to the Trustees for review. In Count II, the Association requested an award of attorney's fees. Homeowners did not file a motion or pleading in response to the Association's petition.

The trial court held a bench trial in December 2007. The Association presented evidence concerning Homeowners' alleged violation of the Indenture. Robert King, the trustee representing the Association at trial, testified that Homeowners erected a shed on their property without seeking or obtaining the Trustees' approval.

Homeowners presented evidence regarding the Trustees' failure to hold annual elections. King testified that the Association had not held an annual election of trustees since 2004. Homeowners argued that the Association's failure to hold annual trustee elections in 2005, 2006, and 2007 violated the Indenture, and therefore, the Trustees were not validly in office and did not have authority to bring suit on behalf of the Association. The Association objected to Homeowners' argument on the grounds that it was not raised in a motion or responsive pleading. In overruling the Association's objection, the court found that, "a party can raise standing at any time, and that's what I believe ... the nature of th[e] defense is...." At the close of all the evidence, the trial court stated that although Homeowners were in violation of the Indenture on the date of the trial, it had to determine whether the Trustees' failure to follow the Indenture regarding elections "takes away the authority of the acting trustees" to bring suit.

Thereafter, the trial court entered a judgment finding that it was not reaching the issue of whether Homeowners were in violation of the Indenture because it was dismissing the Association's petition on the grounds that the Association did not have standing. The court found that the Association did not have standing because its representative parties, the Trustees, were in violation of the Indenture due to their failure to hold trustee elections in 2005, 2006, and 2007. The Association appeals.

## II. DISCUSSION

### A. Standard of Review

■ Our review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* Whether a party has standing is a question of law that we review de novo. *State ex rel. Stewart v. Civil Service Commission of the City of St. Louis,* 120 S.W.3d 279, 284 (Mo.App. E.D.2003).

### B. The Trial Court Erred in Dismissing the Association's Petition against Homeowners on the Grounds that the Association did not have Standing

In its sole point on appeal, the Association asserts that the trial court erred in dismissing its petition against Homeowners on the grounds that the Association did not have standing. The Association argues that the legal issue presented by Homeowners at trial and decided by the trial court was not whether the Associ-

ation had standing, but whether the Trustees, as representative parties of the Association, had the capacity or authority to sue Homeowners. The Association further argues that Homeowners waived any challenge to the Trustees' capacity or authority to sue by failing to raise this issue in a motion or responsive pleading. Finally, the Association maintains that it had standing to sue Homeowners.

### 1. Capacity to Sue versus Standing to Sue

■ The issue of capacity to sue may be confused with the issue of standing to sue. *See City of Wellston v. SBC Communications, Inc.,* 203 S.W.3d 189, 193 (Mo. banc 2006) (finding that the trial court erred in finding that a party had no standing to sue because the issue was whether the party had the capacity to sue); *Midwestern Health Management, Inc. v. Walker,* 208 S.W.3d 295, 298 (Mo.App. W.D.2006) (stating that the respondent confused the issue of capacity to sue with standing to sue); *Earls v. King,* 785 S.W.2d 741, 743 (Mo. App. S.D.1990) (noting that the appellants confused the issue of capacity to sue with standing to sue). The distinction between capacity to sue and standing to sue is important because a claim that a party does not have capacity to sue can be waived or avoided by amendment of the pleadings, while a claim that a party does not have standing to sue cannot be waived. *See City of Wellston,* 203 S.W.3d at 193.

■ "Capacity to sue refers to the status of a person or group as an entity that can sue or be sued." *Id.* (internal quotation omitted). Some courts have referred to a party's capacity to sue as the party's right to have access to the courts,[3] while other courts have referred to a par-

---

3. A party has the right to have access to the courts when it is free of any general disability, such as infancy or insanity. *Midwestern*

*Health,* 208 S.W.3d at 298; *Earls,* 785 S.W.2d at 743.

ty's capacity to sue as the party's authority to sue. *See Midwestern Health,* 208 S.W.3d at 298 (referring to capacity to sue as a party's right to have access to the courts); *Earls,* 785 S.W.2d at 743 (referring to capacity to sue as a party's right to have access to the courts); *Gilmore v. Bi-State Development Agency,* 936 S.W.2d 193, 194 (Mo.App. E.D.1996) (referring to capacity to sue as a party's authority to sue). A claim that a party lacks capacity to sue is waived if it is not raised in a motion or responsive pleading in accordance with Rules 55.13 [4] and 55.27(g)(1)(E).[5] *Cornejo v. Crawford County,* 153 S.W.3d 898, 901 (Mo.App. S.D. 2005).

▬▬▬ Unlike capacity to sue, objections to standing cannot be waived. *City of Wellston,* 203 S.W.3d at 193. Standing may be raised at any time by a party or *sua sponte* by a court. *Singer v. Siedband,* 138 S.W.3d 750, 752 (Mo.App. E.D. 2004). Standing is "a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court." *City of Wellston,* 203 S.W.3d at 193 (internal quotation omitted). Standing requires that a party seeking relief has a legally protectable interest in the subject matter and that it has a threatened or actual injury. *Singer,* 138 S.W.3d at 752. In an action seeking injunctive relief, a plaintiff has standing if it has "a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, immediate or

prospective." *Phillips v. Missouri Department of Social Services Child Support Enforcement Division,* 723 S.W.2d 2, 4 (Mo. banc 1987) (internal quotation omitted).

**2. The Trial Court Mischaracterized Homeowners' Argument as Raising the Association's Standing to Sue Rather than its Capacity or Authority to Sue**

▬▬▬ As we previously noted, "[c]apacity to sue refers to the status of a person or group as an entity that can sue or be sued." *City of Wellston, supra.* At common law, an unincorporated association had no legal status apart from its members and could not sue or be sued unless permitted by statute. *Lake Arrowhead Property Owners Association v. Bagwell,* 100 S.W.3d 840, 842 (Mo.App. W.D.2003). Under the current law, an unincorporated property owners association, like the one in the instant case, may sue in two ways. *See id.* at 842–44. First, under Rule 52.10, an unincorporated property owners association may sue by designating certain members, such as trustees, as representative parties in an action so long as they fairly and adequately protect the interest of the association and its members. *Id.* at 842–43. Secondly, under the holding in *Lake Arrowhead,* an unincorporated property owners association may sue in its own name under a subdivision's indenture in order to enforce a restrictive covenant against non-compliant members of the association. *Id.* at 843–44.

▬▬▬ In contrast,

are peculiarly within the pleader's knowledge.

---

**4.** All references to Rules are to Missouri Supreme Court Rules (2008). Rule 55.13 states in pertinent part that:

When a person desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the person shall do so by specific negative averment, which shall include such supporting particulars as

**5.** Rule 55.27(g)(1)(E) states in pertinent part that: a defense that a "plaintiff does not have legal capacity to sue ... is waived if ... [o]mitted from a motion ..." or when "[n]either made by motion ... nor included in a responsive pleading."

[a]n association has standing to assert a cause of action on behalf of its members if: (1) its members would otherwise have standing to bring suit in their own right; (2) the interest it seeks to protect is germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hoag v. McBride & Son Investment Company, Inc.*, 967 S.W.2d 157, 171 (Mo.App. E.D.1998).

■ In this case, Homeowners argued that the Association's failure to hold annual trustee elections in 2005, 2006, and 2007 violated the Indenture, and therefore, the Trustees were not validly in office and did not have authority to bring suit on behalf of the Association. In overruling the Association's objection to this argument, the court stated, "a party can raise standing at any time, and that's what I believe ... the nature of th[e] defense is...." At the close of all the evidence, the trial court stated that it had to determine whether the Trustees' failure to follow the Indenture regarding elections "takes away the authority of the acting trustees" to bring suit. Finally, the court's judgment found that the Association did not have standing because its representative parties, the Trustees, were in violation of the Indenture due to their failure to hold trustee elections in 2005, 2006, and 2007. Homeowners' argument, and the trial court's statements and findings indicate that the issue presented to and decided by the trial court was whether, in the words of the Indenture, the Trustees were *"duly elected trustees* of Indian Springs *authorized* to conduct business of the Association in accordance with [the Indenture]" (emphasis added). We find that the trial court mischaracterized Homeowners' argument as claiming that the Association did not have standing to sue. The legal issue presented by Home-

owners at trial and decided by the trial court was whether the Trustees, as representative parties of the Association, had the capacity or authority to sue Homeowners.

**3. Homeowners Waived their Claim that the Association did not have Capacity or Authority to Sue**

■ Homeowners did not file a motion or pleading in response to the Association's petition. Accordingly, they waived their claim that the Association did not have capacity or authority to sue by failing to raise it in a motion or responsive pleading in accordance with Rules 55.13 and 55.27(g)(1)(E). *See Cornejo, supra.* Because Homeowners waived any claim that the Association did not have capacity or authority to sue Homeowners, the merits of this issue will not be reviewed by this Court and shall not be reviewed by the trial court upon remand.

**4. The Association had Standing to Sue Homeowners**

We now turn to whether the Association had standing to sue Homeowners. As we previously indicated, the Association had standing to assert a cause of action on behalf of its members if: (1) the members would otherwise have standing to bring suit in their own right; (2) the interest the Association seeks to protect is germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hoag, supra.*

■ As to the first element of standing, the members of the Association would otherwise have standing to bring suit against Homeowners in their own right pursuant to the terms of the Indenture. The Indenture is a contract to which each member, including Homeowners, became a party by acquiring property in Indian Springs. *Maryland Estates Homeowners' Association v. Puckett*, 936 S.W.2d 218,

219 (Mo.App. E.D.1996). Homeowners agreed to be bound by the terms of the restrictions contained in the Indenture, including the restriction providing that:

> No building ... or other structure shall be ... erected ... upon any lot ... until the plans and specific actions showing the nature, kind, shape, height, materials and location of the same shall have been submitted to and approved in writing by the trustees.

*Id.* Each member of the association could bring suit against Homeowners to enforce the Indenture's restrictions pursuant to the Indenture, which states: "The Trustees, or *the owner of any lot subject to this Indenture, shall have the right to enforce, by and proceeding [sic] at law or in equity, any of the* covenants, conditions, *restrictions* and provisions *hereof, either to restrain or enjoin a violation or threatened violation* ..." (emphasis added). *See also Hoag*, 967 S.W.2d at 168 (stating that any benefited landowner may enforce a restrictive covenant by seeking to enjoin the improper use of the burdened land). Because the members of the Association had standing to bring suit against Homeowners in their own right, the first element of standing is satisfied.

The second element of standing is also satisfied. We find that the Association's cause of action seeking to enforce the Indenture's restrictions is germane to the purpose of the Association and the Indenture:

> [T]o create a means of cooperation among lot and homeowners in [Indian Springs] ... for the establishment of a ... common interest ...; to ensure the attractiveness of the development and to preserve, protect and enhance the values and amenities of said properties by the adoption of a ... set of restrictions to govern said property....

Finally, the third element of standing is met pursuant to *Hoag.* Because the Trustees can prove the existence and scope of the restriction by referring to a common, recorded instrument, neither the claim asserted nor the relief requested requires the participation of the individual landowners. *Hoag*, 967 S.W.2d at 171–72.

Because all three elements are satisfied, the Association had standing to sue Homeowners. Therefore, the trial court erred in dismissing the Association's petition against Homeowners on the grounds that the Association did not have standing. Point granted.

## III. CONCLUSION

We reverse and remand the trial court's judgment for further proceedings consistent with this opinion. On remand, the trial court shall: (1) hold a new trial to determine if Homeowners are in violation of the Indenture and if the Association is entitled to an injunction; and (2) award attorney's fees and costs to the prevailing party in accordance with the Indenture's terms, which provide that the prevailing party in an action to restrain or enjoin a violation of the Indenture "shall recover attorney's fees and court costs." *See Sheppard v. East,* 192 S.W.3d 518, 523–25 (Mo.App. E.D.2006) (finding that a trial court must comply with the terms of the contract and award attorney's fees to the prevailing party under a contractual provision stating that "[i]n the event of litigation between the parties, the prevailing party shall recover ... attorney's fees"); *Maryland Estates,* 936 S.W.2d at 220 (upholding attorney's fees awarded to the prevailing party pursuant to the terms of an indenture).

KURT S. ODENWALD, P.J. and PATRICIA L. COHEN, J., concur.