

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| IN THE ESTATE OF MARGARET C. FREEBAIRN, | ) ) | No. ED102264 |
| | ) | Appeal from the Circuit Court |
| Incapacitated. | ) ) | of the City of St. Louis |
| | ) | 0922-PR00659 |
| | ) ) ) | |
| | ) | Honorable Philip Heagney |
| | ) ) | |
| | ) | FILED: November 3, 2015 |

### OPINION

Elizabeth St. John (Appellant), the daughter of Margaret C. Freebairn (Ward), appeals from the probate court's, division of the circuit court, (probate court) entry of judgment dismissing her petition seeking the removal of the Ward's guardians, Gay Norris and Margaret Norris, Ph.D., who are the nieces of the Ward, (collectively referred to as Respondents). We dismiss the appeal.[1]

### Factual and Procedural Background

In September 2009, a petition for the appointment of a guardian and a conservator was filed on behalf of the Ward. The probate court found that an emergency existed that presented a

---

[1] Respondents' motion to dismiss Appellant's appeal is moot. Respondents' motion for frivolous appeal is denied.

substantial risk that serious physical harm would occur to the Ward and irreparable damage would occur to the Ward's property, which needed protection from loss or waste. Accordingly, the probate court appointed a temporary guardian and a conservator for the Ward.

In January 2010, an amended petition for the appointment of a guardian and a conservator was filed on behalf of the Ward. In February 2010, the probate court entered its judgment finding that the Ward was unable to care for herself and her financial resources. The probate court found that the Respondents were suitable and qualified to serve as co-guardians of the Ward and that John T. Ahlquist was suitable and qualified to serve as conservator of the Ward's estate. The probate court also found that the Ward's condition required her placement in a "supervised type of living situation" and that the Ward was "totally incapacitated and totally disabled as defined in Section 475.010." The probate court subsequently ratified the expenditure of funds from the Ward's estate for the support and maintenance of the Ward. The probate court also authorized that attorney's fees for representation of the Ward were necessary and reasonable expenses related to the Ward's physical and mental well being and the preservation of her estate and were to be paid by the estate.

In April 2010, a petition was filed for the sale of the Ward's property. The probate court authorized the sale of the Ward's tangible personal property at a value in excess of its appraised value and the sale of the Ward's home for a price no less than three-fourths of its appraised value. The probate court authorized the sale of the Ward's tangible personal property to Appellant, the Ward's daughter, and authorized the sale of the Ward's home to a private buyer. Between April 2010 and November 2010, the probate court authorized the payment of attorneys' fees and other reasonable expenses related to the administration of the Ward's estate. In November 2010, the probate court authorized the Ward's estate to abandon certain personal

2

property, namely a car, as valueless and as a burden on the Ward's estate if it were retained. In January 2011, the probate court established an irrevocable special needs trust on behalf of the Ward to ensure the payment for the Ward's care.

In July 2011, Appellant filed a petition to remove Respondents as the Ward's co-guardians and for appointment of a successor guardian. Appellant alleged that Respondents should be removed as co-guardians because they had placed unreasonable and arbitrary restrictions upon Appellant's visits with the Ward. Appellant also alleged that the Ward's estate contained no assets.

Respondents subsequently filed a motion to dismiss Appellant's petition on the ground that Appellant did not have standing to bring the action for removal of the Ward's co-guardians because Appellant was not an "interested person" as defined by Section 472.010(15)[2]. The probate court called and heard arguments on Respondents' motion to dismiss Appellant's petition. The probate court later entered its judgment granting Respondents' motion, finding that Appellant was not an "interested person" as defined by the statute and, therefore, lacked standing to proceed. This appeal followed.

Discussion

In her sole point on appeal, Appellant claims the probate court erred in granting Respondents' motion to dismiss her petition to remove Respondents as the Ward's co-guardians because Appellant does have standing in that Appellant, as a child of the Ward with a natural interest in the Ward's welfare, is an "interested person" for the purpose of seeking the removal of Respondents as co-guardians.

---

[2] All statutory references are to RSMo 2000, as amended.

Determining whether a party has standing to appeal is a threshold issue that we review *de novo*. In re R.C.H., 419 S.W.3d 158, 160 (Mo. App. E.D. 2013); Estate of Whittaker, 261 S.W.3d 615, 617 (Mo. App. E.D. 2008). "When a party lacks standing, a court has no jurisdiction to grant the relief requested[,] and the case must be dismissed." Whittaker, 261 S.W.3d at 617. "The right to appeal from a probate court's judgment is purely statutory, and the applicable statutes are to be liberally construed since the law favors the right to appeal." In re Estate of Juppier, 81 S.W.3d 699, 700 (Mo. App. E.D. 2002).

"The guardianship statute provides for the applicability of the probate code to guardianship actions." R.C.H., 419 S.W.3d at 160. "'It also allows for substitution of title description and equates guardianships to decedents' estates unless there exists an inconsistent provision in the guardianship code.'" R.C.H., 419 S.W.3d at 160, quoting Juppier, 81 S.W.3d at 701.

Chapter 475 is the probate code on Guardianship. Under the definitions provided in Chapter 475, a "ward" is a minor or incapacitated person for whom a guardian, limited guardian, or standby guardian has been appointed; a "protectee" is a person for whose estate a conservator or limited conservator has been appointed or with respect to whose estate a transaction has been authorized by the court under Section 475.092 without appointment of a conservator or limited conservator. Section 475.010.

Under the probate code, "interested persons" aggrieved by judgments are entitled to appeal final orders or judgments of the probate court. Section 472.160.1; Whittaker, 261 S.W.3d at 617; Estate of Davis, 954 S.W.2d 374, 379 (Mo. App. E.D. 1997). The probate code defines "interested persons" as heirs, spouses, creditors, or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may

4

have a property right or claim against or an interest in the estate of a protectee. Section 472.010(15). "When determining a party's status as an 'interested person' under the probate code, the courts have been reluctant to extend the statutory definition of 'interested person.'" R.C.H., 419 S.W.3d at 161. "This Court has limited its definition of an 'interested person' to only include those with 'a financial interest in an estate.'" Id., quoting Juppier, 81 S.W. 3d at 701. Furthermore, the Missouri Supreme Court has likewise refused to extend standing to a party with a "'purely sentimental or filial interest' in the ward or protectee, as such an extension would be in direct contravention of legislative intent." R.C.H., 419 S.W.3d at 161, quoting Juppier, 81 S.W. 3d at 701. Even though this Court recognizes the importance of an individual's concern for his or her family member, under the current statutory scheme, "such an interest is insufficient to grant standing to appeal to a party who does not have a financial interest in an estate." R.C.H., 419 S.W.3d at 161, quoting Juppier, 81 S.W. 3d at 701.

Here, the Ward does not yet have heirs or devisees, and Appellant is neither a spouse, nor a creditor, nor a person with a property right or claim against the Ward's estate, and, thus, the Ward is not a protectee. Additionally, the record on appeal reveals that the Ward's estate has zero assets, and Appellant admits in her petition that she has no financial interest in the estate of the Ward, and thus, Appellant is not an interested person. Under Section 472.010(15), to qualify as an "interested person," one must have a financial interest in the estate of a protectee. Although Appellant no doubt has a sentimental and family interest in the Ward, Appellant lacks a vested financial interest in the Ward's estate and does not meet the statutory definition of an "interested person." We note that we are constrained by precedent in this case and find R.C.H. is

5

directly on point.[3]  Consequently, Appellant does not have standing to appeal from the probate court's dismissal of her petition to remove Respondents as co-guardians of the Ward.

Conclusion

Appellant's appeal is dismissed.

_Mary K. Hoff_
MARY K. HOFF, Judge

Robert G. Dowd, Jr., Presiding Judge concurs and Roy L. Richter, Judge, dissents in separate opinion.

---

[3] As this Court previously stated in R.C.H., "the legislature may wish to reconsider the wisdom of equating guardianships to decedents' estates.  The rights and responsibilities to be adjudicated as to the care and custody of a minor or incapacitated person bear little resemblance to those found in the administration of a decedent's estate." Id., 419 S.W.3d at 162 n.5 (internal quotation omitted).

6



# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| IN THE ESTATE OF MARGARET C. FREEBAIRN, | ) ) ) | No. ED102264 |
| | ) | Appeal from the Circuit Court |
| Incapacitated. | ) ) | of the City of St. Louis |
| | ) | 0922-PR00659 |
| | ) | |
| | ) | |
| | ) | |
| | ) | Honorable Philip Heagney |
| | ) | |
| | ) | |
| | ) | FILED: November 3, 2015 |

## DISSENT

I respectfully dissent. The majority relies on In re R.C.H., 419 S.W.3d 158 (Mo. App. E.D. 2013), which cites In re Estate of Juppier, 81 S.W.3d 699 (Mo. App. E.D. 2002). I believe the facts of this case are distinguishable. Both R.C.H. and Juppier involve grandparents wishing to intercede in minors' guardianships involving their grandchildren. The case before us deals with the child of an adult incapacitated person.

The following statutes apply to this case, wherein the adult child of a ward petitioned the probate court to remove the guardians and appoint Appellant (a child of the ward) as the guardian for her incapacitated mother:

> Definitions.
> When used in this code, *unless otherwise apparent from the context*:
> (15) "Interested persons" mean heirs, devisees, spouses, creditors or any other having a property right or claim against the estate of a decedent being

administered and *includes children of a protectee* who may have a property right or claim against or an interest in the estate of a protectee. This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved;

Section 472.010 (emphasis added).[1] Absent from this list are the terms 'incapacitated,' 'minor,' 'guardian,' 'protectee,' and 'ward.'

When referring to a child, only the children of *protectees* are mentioned in this definition for "interested persons" – the children of incapacitated persons are not mentioned. The "context" provided by Chapter 475 makes it apparent that children of wards should not be treated differently than the children of protectees. It is not logical to assume that the child of a disabled person would have greater rights than the child of an incapacitated person.

In Chapter 475, dealing with Guardianship, we find:

The provisions of chapter 472, unless therein restricted to decedents' estates, apply to guardianships and conservatorships. Where sections in chapter 473 are specifically incorporated by reference by any provision of sections 475.010 to 475.370, they shall be applied as if "decedent" or "deceased" read "ward" or "protectee", "executor" or "administrator" or "personal representative" read "guardian", "conservator" and the like, as the case may be, as far as applicable to guardianships and conservatorships and not inconsistent with the provisions of sections 475.010 to 475.370. In other cases, where no rule is set forth for guardianships and conservatorships in sections 475.010 to 475.370, the rule regarding decedents' estates in this law shall likewise apply to guardianships and conservatorships when applicable thereto and not inconsistent with the provisions of sections 475.010 to 475.370, unless a contrary rule of court is duly promulgated or declared; provided that the provisions of sections 473.780 to 473.840, relating to independent administration, shall not apply to guardianships or conservatorships.

Section 475.020.

---

[1] Chapter 472 is included in what was known as the general provisions of the "Probate Code." Section 472.005. "The procedures herein prescribed shall govern all proceedings in probate then pending, except to the extent that, in the opinion of the court, their application in particular proceedings or parts thereof would not be feasible or would work injustice . . . ." Section 472.005.

2

Additionally, Section 475.030: "1. Letters of guardianship of the person may be granted for any person adjudged incapacitated. Letters of conservatorship of the estate may be granted for any person adjudged to be disabled." Section 475.030.

Section 475.050 further outlines the appointment of the incapacitated person's guardian or disabled person's conservator:

> 1. Before appointing any other eligible person as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:
> (1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person nominated by the person;
> (2) Any eligible person nominated in a durable power of attorney executed by the incapacitated or disabled person, or in an instrument in writing signed by the incapacitated or disabled person and by two witnesses who signed at the incapacitated or disabled person's request, before the inception of the person's incapacity or disability, at a time within five years before the hearing when the person was able to make and communicate a reasonable choice;
> (3) The spouse, parents, *adult children*, adult brothers and sisters and *other close adult relatives* of the incapacitated or disabled person;
> (4) Any other eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing.

Section 475.050.1 (emphasis added).

The requirement that the court *shall* consider appointing the adult child of an incapacitated person would seem to grant standing to such individuals, not only at the time of the initial proceedings, but in any proceeding involving the incapacitated parent.

To file a petition for guardianship of an incapacitated person, Section 475.060 reads, in pertinent part, as follows:

> 2. Any person may file a petition for the appointment of himself or herself or some other qualified person as guardian of an incapacitated person. Such petition shall state:
> (1) If known, the name, age, domicile, actual place of residence, and post office address of the alleged incapacitated person, and for the period of three years before the filing of the petition, the most recent addresses, up to three, at

3

which the alleged incapacitated person lived prior to the most recent address, and if any of these facts is unknown, the efforts made to ascertain that fact. In the case of a petition filed by a public official in his or her official capacity, the information required by this subdivision need only be supplied to the extent it is reasonably available to the petitioner;

(2) The estimated value of the alleged incapacitated person's real and personal property, and the location and value of any real property owned by the alleged incapacitated person outside of this state;

(3) If the alleged incapacitated person has no domicile or place of residence in this state, the county in which the property or major part thereof of the alleged incapacitated person is located;

(4) The name and address of the parents of the alleged incapacitated person and whether they are living or dead;

(5) The name and address of the spouse, the names, ages, and addresses of *all living children of the alleged incapacitated person*, the names and addresses of the alleged incapacitated person's closest known relatives, and the names and relationship, if known, of any adults living with the alleged incapacitated person; if no spouse, adult child, or parent is listed, the names and addresses of the siblings and children of deceased siblings of the alleged incapacitated person; the name and address of any agent appointed by the alleged incapacitated person in any durable power of attorney, and of the presently acting trustees of any trust of which the alleged incapacitated person is the grantor or is a qualified beneficiary or is or was the trustee or co-trustee and the purpose of the power of attorney or trust;

(6) The name and address of the person having custody of the person of the alleged incapacitated person;

(7) The name and address of any guardian of the person or conservator of the estate of the alleged incapacitated person appointed in this or any other state;

(8) If appointment is sought for a natural person, other than the public administrator, the names and addresses of wards and disabled persons for whom such person is already guardian or conservator;

(9) The fact that the person for whom guardianship is sought is unable by reason of some specified physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks capacity to meet essential requirements for food, clothing, shelter, safety, or other care such that serious physical injury, illness, or disease is likely to occur;

(10) The reasons why the appointment of a guardian is sought.

Section 475.060 (emphasis added).

Section 475.075 furthermore sets forth the procedure once a petition is filed for

appointment of a guardian ad litem, guardian or conservator for reasons other than a minority:

1. Except as otherwise provided in section 475.062, when a petition for the appointment of a guardian ad litem, guardian or conservator against any person,

4

hereinafter referred to as the respondent, is filed on grounds other than minority, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall promptly set the petition for hearing.

2. The respondent shall be served in person with the following: A copy of the petition; a written notice stating the time and place the proceeding will be heard by the court, the name and address of appointed counsel, and the names and addresses of the witnesses who may be called to testify in support of the petition; and with a copy of the respondent's rights as set forth in subsections 7 and 8 of this section. The notice shall be signed by the judge or clerk of the court and served in person on the respondent a reasonable time before the date set for the hearing. The petition shall state the names and addresses of the spouse, parents, *children who have reached eighteen*, any person serving as his guardian, conservator, limited guardian or limited conservator, any person having power to act in a fiduciary capacity with respect to any of the respondent's financial resources, and any person having his care and custody known to the petitioner. *Each person so listed shall be served* with like notice in any manner permitted by section 472.100. If no such spouse, parent or child is known, notice shall be given to at least one of his closest relatives who has reached eighteen.

Section 475.075 (emphasis added).

Why would this section require service on the adult child when guardianship is sought for the parent if such child did not have standing? This section makes no mention of any required financial interest, which seems to be the deciding factor in the "you have no standing" holding in R.C.H. and Juppier. From the context of Chapter 475, I would hold that the definitions in Section 472.010 must allow the child of an incapacitated adult to have standing, regardless of any financial or potential property interest. I call, once again, on the Legislature to clarify this situation as to the children of incapacitated adults.

_____
ROY L. RICHTER, Judge

5