

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

CAROLYN HOLMES, Personal
Representative for the Estate of
ROBERT V. HOLMES,

                  Appellant,

v.

UNION PACIFIC RAILROAD CO.,

                  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**WD82867**

**OPINION FILED:**
**June 9, 2020**

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Bryan E. Round, Judge

**Before Division Two:** Mark D. Pfeiffer, Presiding Judge, and
Alok Ahuja and Gary D. Witt, Judges

This case addresses the discretion afforded trial courts in responding to a party's efforts to substitute a party in an amended pleading. Here, where the trial court possessed *actual* knowledge that Ms. Carolyn Holmes had, *in fact*, been appointed as the personal representative of her late husband's estate well *before* the trial court dismissed the petition for "lack of standing," immediately *after* the trial court's dismissal ruling it was an abuse of discretion for the trial court to refuse to allow Ms. Holmes to file her amended pleading to assert the *fact* that she had been appointed as the personal representative and possessed the legal status necessary to pursue her late

husband's FELA claim. Accordingly, we reverse and remand for further proceedings consistent with our ruling today.

## Factual and Procedural Background

Mr. Robert Holmes ("Mr. Holmes") died on July 3, 2015. On April 29, 2018, his widow, Ms. Carolyn Holmes ("Ms. Holmes"), filed a petition for damages for wrongful death under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq*., against Mr. Holmes's former employer, Union Pacific Railroad Company ("Union Pacific"), in the Circuit Court of Jackson County, Missouri ("circuit court"). Ms. Holmes's FELA petition alleged that Mr. Holmes suffered work-related toxic exposure that led to his death from lung cancer.

In the caption and the body of the petition, Ms. Holmes alleged that she was the personal representative for her late husband's estate. It was subsequently discovered during the course of written discovery in December 2018 that Ms. Holmes, though the surviving spouse, had not yet been appointed as the personal representative of her late husband's estate.[1] It is, however, undisputed that an estate for the late Mr. Holmes was subsequently opened in March 2019 in the Probate Division of the Circuit Court of Clay County, Missouri, Case No. 19CY-PR00252 ("probate court"), and it is likewise undisputed that the probate court issued Letters of Administration in Mr. Holmes's probate estate on April 9, 2019, appointing Ms. Holmes as the personal representative of Mr. Holmes's estate.

---

[1] By way of affidavit dated December 21, 2018, counsel for Union Pacific averred that during his attempt to obtain Mr. Holmes's medical records, he discovered that letters of administration from an estate for Mr. Holmes had not been issued declaring that Ms. Holmes was the personal representative and it hindered his ability to obtain medical records. The same affidavit reflects that communications occurred between opposing counsel about the necessity to open the estate and obtain the letters of administration, and Ms. Holmes's counsel agreed that he would take steps to open the estate and have Ms. Holmes appointed as personal representative. In fact, the estate was opened in March 2019 and letters of administration were issued appointing Ms. Holmes as the personal representative in April 2019. In the interim, there was nothing prohibiting a subpoena duces tecum to obtain the medical records more promptly if Union Pacific's counsel felt that time was of the essence to obtain the subject deceased person's records.

On December 21, 2018, Union Pacific moved to dismiss Ms. Holmes's petition "under Mo. R. Civ. Pro. 55.27(a)(1)" (*i.e.*, lack of jurisdiction over the subject matter due to Ms. Holmes's alleged lack of "standing" to maintain the lawsuit) and relied upon pre-*Webb*[2] precedent that inappropriately conflated the concepts of a circuit court's "authority" with its "jurisdiction" over the subject matter. There were numerous disputes between the parties as to the timeliness of Ms. Holmes's response to Union Pacific's motion to dismiss, culminating with the circuit court declaring via order dated March 4, 2019, that all amended pleadings should be filed by April 3, 2019, and that it would take up the motion to dismiss at that time.

Prior to April 3, 2019, Ms. Holmes's counsel notified the circuit court that Mr. Holmes's probate estate had been opened in the probate court and that letters of administration would be forthcoming shortly. On April 9, 2019, the probate court issued the aforementioned letters of administration and that order of the probate court was presented to the circuit court on the same date along with a proposed amended pleading that did *not* change the nature or substance of the FELA claim against Union Pacific, but rather only attached the procedural documentation (*i.e.*, probate court order) to confirm Ms. Holmes's status as personal representative of her late husband's estate, confirm that she had complied with the statutory prerequisite to suit, and thereby confirm that she possessed the legal status necessary to proceed with the subject FELA claim.

The circuit court did *not* take up the motion to dismiss until **April 29, 2019**, some twenty days after the circuit court had *actual* knowledge that Ms. Holmes had, *in fact*, been appointed personal representative of her late husband's estate by the probate court and, thus, possessed the legal capacity to pursue the subject FELA claim on behalf of her late husband. The circuit court refused to grant leave to amend the petition, refused to consider documentation provided by

---

[2] *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009).

3

Ms. Holmes confirming her appointment by the probate court as personal representative,[3] instead considered Union Pacific's affidavit attached to its motion to dismiss that presented evidence outside Ms. Holmes's wrongful death petition, and issued its order sustaining Union Pacific's motion to dismiss on the ground that Ms. Holmes "lacks standing to bring this cause of action" and hence concluded that the circuit court lacked "jurisdiction" to permit the cause of action to proceed.

After the circuit court's order dismissing the case due to its perceived pleading deficiency that Ms. Holmes lacked standing, Ms. Holmes immediately repeated her request for relief by seeking leave of the circuit court to file her amended pleading "correcting" the circuit court's perceived pleading deficiency addressed in the circuit court's dismissal ruling, but the circuit court denied Ms. Holmes the opportunity to amend her pleading—which again, was akin to a substitution of party plaintiff and not a substantive amendment to the original pleading. Final judgment of dismissal[4] was entered by the circuit court on June 25, 2019, and Ms. Holmes timely appealed. On appeal, Ms. Holmes argues that the circuit court abused its discretion in refusing to

---

[3] While the dissenting opinion chooses to join the circuit court in debating whether the probate court *should* have issued an order appointing Ms. Holmes as the personal representative, no amount of debate on that topic can change that *fact* in *this* lawsuit. And, in the probate case pending in Clay County, there has never been any objection to Ms. Holmes's appointment as the personal representative, a *fact* that the dissent ignores when it cites to inapposite precedent with a completely different procedural posture, *Estate of Mickels*, 542 S.W.3d 311 (Mo. banc 2018), an appeal addressing the *probate court's <u>denial</u>* of an appointment of personal representative that was untimely requested. Here, the *circuit* court is *not* the *probate* court, and the *probate* court <u>granted</u> Ms. Holmes's request to be appointed as personal representative *with no objection*. The simple *fact* is that the circuit court in *this* lawsuit cannot ignore the *fact* that Ms. Holmes has been appointed as the personal representative of her late husband's estate. If, on remand, the circuit court wishes to collaterally attack the *probate* ruling of the *probate* court, refuse to accept the *fact* of Ms. Holmes's uncontested appointment by the *probate* court as personal representative of her late husband's estate, and chooses to dismiss the underlying case on that basis, then presumably *on the next appeal* it will be appropriate to address the circuit court's authority to collaterally attack another court's ruling—particularly one that was made *before* the circuit court in *this* lawsuit chose to ignore it.

[4] Although the general rule prohibits appeal from a dismissal without prejudice, there are exceptions, the application of which depends on "whether the dismissed party will be unable to maintain their action in the court where the action was filed presuming the reason for dismissal was proper." *Palisades Collection, LLC v. Watson*, 375 S.W.3d 857, 859-60 (Mo. App. W.D. 2012). Here, because the statute of limitations for Ms. Holmes's FELA claim would otherwise render her unable to maintain her action in the court where the action was filed, the judgment of dismissal in this case had the effect of a final judgment for the purposes of appellate review.

permit her to amend her pleading both before and after the circuit court issued its dismissal ruling on the basis of "lack of standing."

## Standard of Review

Though Ms. Holmes asserts error by the circuit court in refusing to permit her amended pleading to be filed either *before* the circuit court's dismissal or immediately *after* the dismissal ruling, we find the latter dispositive and hence only address the circuit court's discretion in refusing to permit Ms. Holmes to amend her pleading immediately *after* the dismissal ruling of April 29, 2019.[5] Both parties cite to *Costa v. Allen*, 274 S.W.3d 461 (Mo. banc 2009), and Rule 67.06[6] in their appellate briefing to this court, and we agree that such rule and precedent are applicable here.

Rule 67.06 states:

> "***On sustaining a motion to dismiss a claim*** . . . the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed. If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered on motion except in cases of excusable neglect; in which cases amendment shall be made promptly by the party in default.

(Emphasis added.) The denial by a circuit court to grant leave to amend upon issuing a dismissal ruling[7] is reviewed for abuse of discretion. *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 92 (Mo. App. E.D. 2012). "In reviewing the trial court's decision [to deny leave to amend], we look

---

[5] The dissenting opinion fails to recognize the difference between the circuit court's rulings *before* dismissal (Rule 44.01) versus *after* dismissal (Rule 67.06) and focuses misplaced Rule 44.01(b) discussion on "excusable neglect" which, for purposes of today's appeal, is *only* relevant on the circuit court's amended pleading rulings *before* dismissal. But, our ruling today *only* addresses the circuit court's discretion in refusing to permit an amended pleading *after* dismissal. And, as much as the dissenting opinion attempts to mischaracterize the March 4, 2019, scheduling order as a "dismissal" ruling contemplated by Rule 67.06, that scheduling order simply is *not* a dismissal ruling that invokes the Rule 67.06 timeline standards. The dismissal ruling plainly did **not** occur until **April 29, 2019**. This mischaracterization by the dissent is fatal to its application of Rule 67.06.

[6] All rule references are to I MISSOURI COURT RULES—STATE 2020.

[7] In the introductory and concluding paragraphs of the dissenting opinion, the dissent refers to Ms. Holmes's failure to challenge "the circuit court's dismissal order" or indicating "respect [for] my colleagues' reluctance to affirm the circuit court's judgment dismissing Holmes's petition." But, as we explain in the majority opinion, entering the "dismissal order" is *not* the point of Rule 67.06 or *Costa v. Allen* or *this* appeal. What we are addressing in *this* appeal is the abuse of discretion by the circuit court in refusing to grant Rule 67.06 relief to Ms. Holmes *after* the "dismissal order" was entered. Failing to recognize this distinction is where the majority and dissenting opinions diverge.

to see whether justice is furthered or subverted by the course taken." *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 257 (Mo. App. W.D. 2012) (quoting *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.3d 494, 498 (Mo. App. E.D. 1994)).

> Factors to be considered in determining whether the trial court erred in denying leave to amend include: (1) the hardship to the moving party if leave to amend is denied; (2) the moving party's reasons for omitting the matter from the original pleading; and (3) any injustice that would result to the nonmoving party were leave to amend granted.

*Id.*

## Analysis

### *The Underlying Judgment*

Though Ms. Holmes has not challenged the substantive basis for the circuit court's dismissal ruling on appeal, it bears some relation to whether justice is being "furthered or subverted" if this dismissal ruling is permitted to stand.[8] And, though the circuit court may have had some justified frustration with Ms. Holmes's counsel and his dilatory shortcomings related to the rules of procedure and the circuit court's previous scheduling orders leading up to its dismissal ruling, the circuit court also chose to ignore rules of procedure and case precedent in maneuvering its way to punishing the litigant for the sins of the attorney.

First, this was a motion to dismiss—not a motion for summary judgment. This is a distinction with a difference under our rules of procedure:

---

[8] The dissent ignores the affirmative steps Ms. Holmes took to establish her capacity to sue before the dismissal ruling was issued by the circuit court and criticizes Ms. Holmes for failing to challenge the substantive basis of the dismissal ruling after it was entered. However, as we explain in today's ruling, it does not matter that the circuit court mistakenly considered Ms. Holmes's status as personal representative a "standing" issue—for, Ms. Holmes had provided evidence of her personal representative appointment to the circuit court *before* the dismissal ruling and should have been permitted to amend her pleadings "in form only" *after* the dismissal ruling. Contrary to the assertion of the dissenting opinion, when analyzing the discretion of circuit courts, the issue of "justice" is never waived; instead, we must "look to see whether justice is furthered or subverted" by the court's exercise of its discretion. In that light, it is relevant to our discussion that the circuit court should never have entertained the subject motion to dismiss in the manner that it did, let alone grant it.

> In ruling on a motion to dismiss, the trial court can only consider the pleadings, and appellate review is also limited to the pleadings. If the court considers matters outside the pleadings, Rule 55.27(a) allows a motion to dismiss to be converted into a motion for summary judgment if certain procedures are followed.
>
> . . . .
>
> Before a trial court may treat a motion to dismiss as a motion for summary judgment, however, it must notify the parties that it is going to do so and give the parties an opportunity to present all materials pertinent to a motion for summary judgment. Where there is no evidence that the court notified the parties that it intended to treat the motion as a request for summary judgment or consider matters outside the pleadings it will be treated as a motion to dismiss.

*Cmty. Treatment, Inc. v. Mo. Comm'n on Human Rights*, 561 S.W.3d 107, 111-12 (Mo. App. W.D. 2018) (citation omitted) (internal quotation marks omitted).

Here, the original wrongful death FELA petition filed by Ms. Holmes alleged that she was the personal representative. Though Union Pacific presented affidavit "testimony" that this statement of fact was untrue (at that time), Union Pacific did *not* file a motion for summary judgment; rather, Union Pacific filed a motion to dismiss. Union Pacific never requested that the circuit court convert the motion to dismiss to a motion for summary judgment. Similarly, the circuit court never notified the parties that it would treat the motion to dismiss as a motion for summary judgment and never notified Ms. Holmes that she would have the opportunity to present any counter-affidavit or evidence to confirm her status as the personal representative of her late husband's estate prior to the circuit court's dismissal ruling.

Given this record, the circuit court should have reviewed the pleading and *only* considered the pleading; for, "[t]he determination of factual questions is not appropriate on a motion to dismiss." *Cmty. Treatment, Inc.*, 561 S.W.3d at 111. And, the circuit court must assume all facts alleged in the petition are true. *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo.

banc 2016). The underlying judgment by the circuit court plainly failed to review the motion to dismiss under the correct lens of factual review.[9]

Next, and importantly, both Union Pacific and the circuit court erroneously treated Ms. Holmes's *capacity to sue* as the personal representative of her late husband's estate as an issue of *standing* and compounded that mistake of law by conflating the concept of a circuit court's "authority" versus its "jurisdiction" and ultimately concluded that a statutory prerequisite to suit (*i.e.*, Ms. Holmes's personal representative status) was a matter of subject matter jurisdiction. In so doing, both Union Pacific and the circuit court cited to pre-*Webb* precedent relevant to issues of "standing" and its impact upon "jurisdiction," *Bird v. Weinstock*, 864 S.W.2d 376, 380 (Mo. App. E.D. 1993) ("If a party lacks standing sufficient to maintain the action and therefore has no right to relief, the court necessarily lacks jurisdiction of the question presented and cannot enter judgment on the matter."); *W. Cas. & Sur. Co. v. Kansas City Bank & Trust Co.*, 743 S.W.2d 578, 580 (Mo. App. W.D. 1988) (stating that if a party lacks standing, then its petition is subject to dismissal because it fails to establish the requisite subject matter jurisdiction),[10] and failed to recognize that Ms. Holmes's status as personal representative (or not) has nothing to do with her *standing* to sue in the instant proceeding; rather, it only impacts her *capacity* to sue. And, in point of fact, Union Pacific has *never* asserted the affirmative defense of Ms. Holmes's lack of capacity

---

[9] The dissent asserts that where parties fail to object to the circuit court considering matters outside the pleadings, the issue is considered waived. However, here, by Ms. Holmes asserting a right to have her *own* "matters outside the pleadings" considered by the circuit court, the procedural scenario in this case is unlike any cited by the dissent, and Ms. Holmes's efforts below to seek the circuit court's consideration of the probate court's order is tantamount to an objection to the circuit court's disregard of *all* the relevant *facts* that had bearing upon Ms. Holmes's legal status to pursue the underlying FELA claim on behalf of her deceased husband.

[10] As *J.C.W. ex rel. Webb v. Wyciskilla*, 275 S.W.3d 249, 254 (Mo. banc 2009), teaches us, these cases should no longer be cited for the premise that a court's lack of "authority" to hear a dispute equates with a lack of "subject matter jurisdiction." As we have recently noted, statutory prerequisites to filing suit "do *not* have any impact upon a circuit court's subject matter jurisdiction. . . . Statutory prerequisites to suit are *not elements* to a lawsuit; . . . [and] are *not* jurisdictional pleading requirements, at least not since the *Webb* ruling." *McDonald v. Chamber of Commerce*, 581 S.W.3d 110, 115-16 (Mo. App. W.D. 2019). And, as we discuss further in today's ruling, since the real question is Ms. Holmes's *capacity to sue* and that issue has never been raised by Union Pacific, Union Pacific has—at present— waived that issue for review both with the circuit court and this court.

8

to sue nor raised it by way of motion asserting such defense pursuant to Rule 55.27(g)(1). Again, this is an important distinction.

We find *City of Wellston v. SBC Communications*, *Inc.*, 203 S.W.3d 189 (Mo. banc 2006), and its progeny instructive:

> First, the trial court was incorrect that failure to bring suit in the name of [the entity legally authorized to bring suit] goes to [plaintiff's] standing to sue. The alleged error is not one of standing but of whether [plaintiff] had the *capacity to sue* . . . :
>
> > Capacity to sue refers to the status of a person or group as an entity that can sue or be sued, and is not dependent on the character of the specific claim alleged in the lawsuit. . . .
> >
> > Standing to sue evaluates the sufficiency of a plaintiff's interest, in the subject of the lawsuit. It is a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court . . . . Objections to standing, unlike objections based on the real party in interest rule, cannot be waived . . . .

*Id.* at 193 (quoting 15 MISSOURI PRACTICE *Civil Rules Practice* § 52.01-2 (Mary Coffey ed., 2d ed. 1997)).

"The distinction between capacity to sue and standing to sue is important because a claim that a party does not have capacity to sue can be waived or *avoided by amendment of the pleadings*, while a claim that a party does not have standing to sue cannot be waived." *In Their Representative Capacity as Trustees for Indian Springs Owners v. Greeves*, 277 S.W.3d 793, 797 (Mo. App. E.D. 2009) (emphasis added) (citing to *City of Wellston*, 203 S.W.3d at 193).

> Rule 55.13 provides that when a defendant desires to raise an issue as to the legal existence of a party, or the capacity of a party to sue, the defendant "shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." Rule 55.27(g)(1) provides that the defense that the plaintiff does not have legal capacity to sue is waived if it is neither made in a motion nor included in a responsive pleading.

*Midwestern Health Mgmt. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. W.D. 2006).

9

Conversely, the Missouri Rules of Civil Procedure clearly provide that "[m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just." Rule 52.06. Hence, "Rule 52.06 clearly permits substitution of the proper party plaintiff where suit has been brought in the wrong name, whenever the issue becomes known[.]" *City of Wellston*, 203 S.W.3d at 194.

Here, there is no dispute between the parties that the FELA statute clearly identifies the entity that possesses the capacity to sue in the present controversy:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . , shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, **in case of the death of such employee, to his or her personal representative**, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (emphasis added); *Mo., Kan. & Tex. Ry. Co. v. Wulf*, 226 U.S. 570, 576 (1913) (noting that under FELA, the plaintiff could not "maintain the action except as personal representative").

Here, however, in its gatekeeper role,[11] the circuit court had actual knowledge as of March 25, 2019, that the probate estate had been opened and Ms. Holmes's appointment as personal representative was imminent; further, the circuit court had actual knowledge as of April 9, 2019, that Ms. Holmes had been appointed by the probate court as the personal representative of her late husband's estate and hence possessed the legal capacity to pursue her late husband's FELA

---

[11] Should the issue of Ms. Holmes's capacity to sue ever be properly challenged by Union Pacific, such issue is an issue for the court, not the jury, to resolve.

claim. The circuit court knew these undisputed facts well before the circuit court decided to dismiss Ms. Holmes's claim on the *erroneous* basis that she lacked *standing* on April 29, 2019.

Hence, even though Union Pacific has *never* raised the affirmative defense of lack of capacity to sue by way of a Rule 55.27(g)(1) motion or a responsive pleading with a corresponding motion for summary judgment, and the circuit court possessed no authority to take up the issue of Ms. Holmes's capacity to sue absent such motion or responsive pleading, the circuit court not only took up the issue but erroneously labeled the issue as one involving Ms. Holmes's *standing* to sue.

Hence, were we to permit the underlying judgment of dismissal to stand, we question whether the procedural and substantive merits of the underlying dismissal ruling could, in good faith, be deemed to promote the ends of justice.

*Discretionary Factors*

Applying the discretionary factors to the circuit court's refusal to permit Rule 67.06 relief to Ms. Holmes when she provided the circuit court an amended pleading "correcting" what the circuit court had concluded was a pleading defect both before and immediately after the circuit court's dismissal ruling leads us to conclude that justice is not furthered by permitting the circuit court's ruling to stand.

Here, Ms. Holmes will be forever barred from pursuing her late husband's FELA claim if she is not permitted to file her amended pleading, which effectively serves as nothing more than a substitution of party plaintiff; Union Pacific will suffer little to no prejudice by permitting Ms. Holmes to amend her pleadings as the amended pleading is nothing more than a form, not substantive, amendment; and the gatekeeper issue in question (*i.e.*, capacity to sue) is more of a legal question for the courts than a pleading requirement, so there is some question whether Ms. Holmes was even *required* to plead her personal representative status. What *is* important to

11

the means of justice is that Ms. Holmes has, in fact, demonstrated her *capacity* to sue—and she did so *prior* to the circuit court's erroneous dismissal ruling on the basis of *standing* to sue.

Our *Tisch v. DST Systems, Inc.* factor analysis, thus, leads us to conclude that justice is subverted by the circuit court refusing to permit a simple "form not substance" amendment to her pleading upon the circuit court's dismissal ruling. "Missouri law favors disposition of a case on the merits when possible, and care must be given by trial courts to issue their rulings in a manner that serves the ends of justice." *Molder v. Trammell Crow Servs., Inc.*, 309 S.W.3d 837, 840 (Mo. App. W.D. 2010) (citation omitted). "We are mindful that trial courts must be able to control and expedite their dockets. But it is of greater importance that the court's work should be done with care and discernment and that [the court] should be ever diligent and zealous in [its] unremitting efforts to attain the ends of justice." *Peet v. Randolph*, 103 S.W.3d 872, 877 (Mo. App. E.D. 2003) (internal quotation marks omitted). "This is because the purpose of all courts is to do justice, and justice is best served when all litigants have a chance to be heard." *Id.* at 877-78 (internal quotation marks omitted).[12]

Simply put, Rule 67.06 mandates that "*[o]n sustaining a motion to dismiss a claim*[13] . . . the court **shall freely grant leave to amend**." Rule 67.06 (emphasis added). The general

---

[12] Of note, in Union Pacific's supplemental appendix, it provided this Court rulings from numerous other federal district court cases that had addressed similar issues from identical toxic exposure FELA claims against Union Pacific as those presented in the underlying lawsuit. In almost all of the rulings related to those federal court cases, we discern that similar to our ruling today, the federal district courts in those FELA claims noted that "the issue [amending a pleading to denote personal representative status] is one of form rather than substance. The record shows that the plaintiff has now been appointed personal representative of the decedent's estate. The amendment will not prejudice [Union Pacific] because it has been on notice of the claim since its inception. The plaintiff's claim is a type of claim—exposure to toxic chemicals in the workplace—of which [Union Pacific] is surely familiar." Resp't App. p. A24. Likewise, though some of the federal judicial rulings imposed monetary sanctions upon the plaintiff for the delay in obtaining the personal representative probate order, those same courts also justified sanction over dismissal of the pleading in that "dismissal is a harsh outcome, particularly where, as in this case, the statute of limitations will impose a bar to re-filing." Resp't App. p. A44. The dissent cites to the one instance where, *after the plaintiff was afforded relief similar to Rule 67.06 from Missouri's rules of civil procedure but failed to meet the court-imposed timeline standard, then and only then was the action dismissed.*

[13] Herein lies the fatal defect in Union Pacific's argument on appeal and the dissenting opinion as it relates to *Costa v. Allen*, 274 S.W.3d 461 (Mo. banc 2008). Both Union Pacific and the dissent take the approach that the

application of Rule 67.06 is that "[o]rdinarily when a first pleading is ruled to be insufficient in a trial court, the party is afforded a reasonable time to file an amended pleading if desired." *Costa v. Allen*, 274 S.W.3d 461, 463-64 (Mo. banc 2008) (internal quotation marks omitted).

Here, like *Costa*, the present lawsuit is in the early stages of the litigation. Here, like *Costa*, after the trial court's ruling dismissing Ms. Holmes's first pleading, Ms. Holmes immediately sought relief from the circuit court to file an amended pleading. But here, unlike *Costa*, Ms. Holmes took the additional affirmative step to provide the circuit court with a proposed amended pleading that addressed the circuit court's concern as to her legal status as a personal representative for her late husband's estate—by attaching as an exhibit to such amended pleading the probate court order appointing her as the personal representative. Ms. Holmes never sought to add new claims or change the nature of her underlying FELA claim; instead, she only sought to clarify that she was wearing the appropriate "litigation hat" to authorize her to pursue the same FELA claim that she had always made on behalf of her late husband against Union Pacific. Under these circumstances, it was an abuse of discretion to refuse to permit Ms. Holmes to amend her pleading by way of "form" and not "substance." *See also Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 433-34 (Mo. App. W.D. 2003) (holding court's refusal to allow pleading amendment that was nothing more than a substitution of party plaintiff was an abuse of discretion).

_____

March 4, 2019 order of the circuit court served as a dismissal ruling; it did not. The *first* dismissal of this proceeding occurred on April 29, 2019, twenty days *after* the circuit court had been made aware that Ms. Holmes was, in fact, the personal representative of her late husband's estate. Likewise, though the dissent quotes extensively from the case of *Sheffield v. Matlock*, 587 S.W.3d 723 (Mo. App. S.D. 2019), the dissent fails to mention that the proposed amended pleading in *Sheffield* was an attempt by the plaintiff to add *new* claims and change the *nature* of the pleadings after extensive discovery had been conducted relating to the original claims asserted. That is *not* the factual or procedural scenario in the present case—where Ms. Holmes is *not* changing the nature or type of claim that she is presenting and is merely "correcting" the perceived pleading deficiency relating to her original claim, precisely the type of amended pleading that *Costa v. Allen* found to be a clear abuse of discretion for a trial court to refuse to permit pursuant to Rule 67.06. The dissent fails to cite a case that rebuts *Costa v. Allen* and *Sheffield* (a Southern District opinion) certainly does not purport to overrule the authority of *Costa v. Allen* (a Missouri Supreme Court case).

13

*FELA Precedent*

It has also not been lost on our analysis today that, "[a]s a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Sw. Ry. v. Dickerson*, 470 U.S. 409, 411 (1985). "FELA was designed to be a broad, remedial statute, eliminating several common-law tort defenses and providing liberal recovery for injured workers." *Griffin v. Dakota, Minn. & E. R.R. Corp.*, 551 S.W.3d 578, 582 (Mo. App. W.D. 2018) (internal quotation marks omitted). The United States Supreme Court has "liberally construed FELA to further Congress'[s] remedial goal." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994).

"In [*Missouri, Kansas & Texas Railway Co. v. Wulf*, 226 U.S. 570, 576 (1913),] the action had been instituted by the mother of the deceased as his sole heir, and subsequently [*i.e.*, approximately two years later][14] she was appointed administratrix and was made a party plaintiff." *Drakopulos v. Biddle*, 231 S.W. 924, 926 (Mo. 1921). "The action in that case was under the [F]ederal Employers' Liability Act, where the action could only be maintained by the personal representative of the deceased. The substitution was approved, and it was ruled that the substitution did not change the cause of action." *Id.* The *Wulf* court ruled that the amendment was not equivalent to the commencement of a new cause of action nor did it set up any different state of facts as grounds for the action, but rather was a change in form not substance, and thus, it would not be subject to the statute of limitations of FELA, but rather would relate back to the beginning of the suit. 226 U.S. at 576.

---

[14] The dissenting opinion asserts that Union Pacific has suffered prejudice due to the four-month delay in Ms. Holmes's appointment as personal representative. Irrespective, a four-month delay is hardly comparable to the *two-year* delay (of appointment of the widow as personal representative of her late husband's estate) in *Wulf* that the Supreme Court of the United States found no prejudice to exist—due to the simple fact that the substitution of "personal representative" for "surviving widow" was nothing more than a change in *form* not *substance* of the underlying FELA claim. We believe the prejudice analysis of the United States Supreme Court is more compelling than that of the dissenting opinion.

The same result is proper here. On remand, the circuit court is instructed to permit Ms. Holmes to file her amended pleading, and her appointment as personal representative shall be deemed to relate back to the original pleading filed in the underlying FELA wrongful death claim.

**Conclusion**

The circuit court's judgment of dismissal is vacated, and the cause is remanded for further proceedings consistent with our ruling today.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Gary D. Witt, Judge, concurs.

Alok Ahuja, Judge, dissents separately.

15


| | | |
|---|---|---|
| CAROLYN HOLMES, Personal Representative for the Estate of ROBERT V. HOLMES, | ) ) ) | |
| Appellant, | ) | WD82867 |
| | ) | |
| v. | ) | **FILED: June 9, 2020** |
| | ) | |
| UNION PACIFIC RAILROAD CO., | ) | |
| Respondent. | ) | |

## DISSENTING OPINION

I respectfully dissent. Because Carolyn Holmes does not challenge on appeal each of the grounds underlying the circuit court's dismissal order, and because the circuit court acted within its discretion in refusing to grant Holmes leave to amend her petition out of time, I would affirm the circuit court's judgment. I cannot join the majority opinion for the further reason that it justifies reversal based on at least two arguments which Holmes has never made, either in the circuit court or on appeal. It is inappropriate for this Court to act as Holmes' advocate, raise non-jurisdictional arguments which she has plainly waived, and base reversal on issues which neither the respondent nor the circuit court has had the opportunity to address.

### Time Bar on Appointment as Personal Representative

I begin with an issue Holmes' briefing wholly ignores. In the circuit court's dismissal order, the court observed that Holmes would be time-barred from obtaining letters of administration, given that her husband had died in 2015:

Under Missouri law, the statute of limitations to apply for appointment as a personal representative is one year after the date of the death of decedent. Mo. Rev. Stat. § 473.020. However, under section 537.021.1,

> "[t]he existence of a cause of action. . . for wrongful death . . . shall authorize and require the appointment by a probate division of the circuit court of:
>
> (1)    A personal representative of the estate . . . and such appointment in only those cases involving los[t] chance of recovery or survival shall be made notwithstanding the time specified in section 473.050 for the exclusive purpose of pursuing a cause of action related to such injury or wrongful death . . .

Here, over one year has passed since decedent's death.

It appears that the circuit court was correct in concluding that Holmes had one year in which to seek appointment as personal representative. In *Estate of Mickels*, 542 S.W.3d 311 (Mo. 2018), the Missouri Supreme Court affirmed the denial of letters of administration sought by a widow more than one year after her husband's death; the widow had sought a belated appointment as personal representative so that she could prosecute a survival action on her deceased husband's behalf. The Court held that "Section 473.020 is clear: applications for the appointment of a personal representative *must* be filed within one year after the death of the decedent." *Id.* at 314-15. The Court emphasized that "[t]he only exception to this statute of limitations applies to claims of lost chance of recovery or survival." *Id.* at 315 n.7 (citation and internal quotation marks omitted). "This Court cannot disregard the firm limitation on when personal representatives may be appointed in favor of a judicially created equitable exception, no matter how compelling the argument or how narrowly tailored the exception." *Id.* at 315. In this case, the claim Holmes seeks to prosecute is not one for "lost chance of recovery or survival," and therefore the statutory exception to the time bar in § 473.020, RSMo, does not appear to be applicable.

2

Although the circuit court's dismissal order reasoned that any appointment of a personal representative for Robert Holmes' estate would now be time-barred, Holmes' briefing on appeal does not even address the issue. She does not argue: that the circuit court's reading of the relevant statutes was erroneous; that the court's discussion of the one-year time bar was not an independent basis for its dismissal order; or that the Clay County Circuit Court's issuance of letters of administration, almost four years after Robert Holmes' death, could not be collaterally challenged as untimely in this wrongful death proceeding.[1]

To the extent that the circuit court's dismissal order was based in part on the fact that Holmes was time-barred from seeking appointment as the personal representative of her late husband's estate, Holmes' failure to challenge that legal determination, standing alone, mandates affirmance. *See, e.g.*, *KDW Staffing, LLC v. Grove Constr., LLC*, 584 S.W.3d 833, 838 (Mo. App. W.D. 2019) ("'Failure to challenge on appeal all articulated grounds for the court's ruling is fatal to the success of the appeal.'" (citations omitted)); *Knight v. Con-Agra Foods, Inc.*, 476 S.W.3d 355, 358 (Mo. App. W.D. 2015) ("if a trial court or administrative agency relies on multiple, independently sufficient grounds in issuing an adverse ruling, the appellant must challenge each of those independent grounds of decision"); *City*

---

[1] Particularly since the issue has not been briefed by the parties, it is unclear to me whether an untimely appointment of a personal representative could be challenged in this FELA action. A treatise on Missouri probate law states that "[a] mere irregularity in the appointment of a personal representative that does not render his appointment totally void, does not make a proceeding for sale instituted by him subject to collateral attack. If, however, the whole record affirmatively shows that the appointment was wholly void, . . . it has been held that the proceeding was void." 5B John A. Borron, MO. PRACTICE, PROBATE LAW & PRACTICE § 1103 (2020) (footnotes omitted). It may be that Union Pacific was entitled (and may yet be entitled) to seek revocation of the letters of administration issued to Holmes in the probate division of the Clay County Circuit Court. *See, e.g.*, *In re Dugan's Est.*, 309 S.W.2d 137, 140-41 (Mo. App. 1957).

*of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 591 (Mo. App. W.D. 2009).[2]

## Factual Background

To review the circuit court's discretionary ruling refusing to allow Holmes to amend her petition out of time, we must begin with a full understanding of the course of proceedings in the circuit court. The full factual context reflects that Holmes' counsel was well aware of the need for Holmes to be appointed as the personal representative of her deceased husband's estate, months before the circuit court gave her thirty days in which to secure that appointment. Holmes falsely represented – on multiple occasions – that she *was* in fact her husband's duly appointed personal representative. When those representations were challenged, her counsel made multiple unfulfilled promises to obtain an appointment. She offered the circuit court *no* explanation, much less a credible explanation, for her failure to even apply for appointment as personal representative until eleven months after her suit was filed, and just 10 days before the court's thirty-day deadline expired. Holmes' unjustified delay in obtaining appointment as personal representative prevented Union Pacific from gaining timely access to her deceased husband's medical records, and threatened to upend the schedule established in the circuit court's case management order. Given these factual circumstances, the circuit court could – in its discretion – find that Holmes had failed to exercise reasonable diligence to secure letters of administration, and that she had not demonstrated excusable neglect sufficient to justify an extension of the court's thirty-day deadline.

---

[2] I recognize that Holmes' appeal challenges the circuit court's refusal to permit her to amend her petition out of time, and does not directly challenge the circuit court's dismissal ruling. But Holmes only sought leave to amend in order to allege that she had been belatedly appointed as the personal representative of her husband's estate. If no such appointment could be legally effective (as the circuit court concluded in its dismissal order), then denying Holmes leave to amend becomes a moot point.

4

When she filed her petition, Holmes was plainly aware that only the personal representative of a deceased railroad worker's estate is entitled to prosecute a wrongful-death claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 (the "FELA"). Holmes filed a Petition for Damages, alleging that Union Pacific was liable for her husband's death from lung cancer under the FELA, on April 29, 2018 – a *full year* before the circuit court entered its order denying her leave to amend her petition out-of-time. The caption of Holmes' Petition identifies her – falsely – as "Personal Representative for the Estate of Robert V. Holmes," and the body of the petition repeats that false allegation twice more.

The record reflects that Holmes' counsel was aware, well before this suit was even filed, that a FELA wrongful death claim must be prosecuted by the decedent's personal representative. In her opposition to Union Pacific's Motion to Dismiss, Holmes informed the circuit court that her counsel had litigated this precise issue in at least two other FELA wrongful-death cases brought against Union Pacific.[3] In its briefing on the Motion to Dismiss, Union Pacific advised the circuit court that "this is at least the *sixth* case filed by Holmes' counsel in which he failed to comply" with the requirement that a FELA wrongful-death plaintiff be appointed as the decedent's personal representative.

After conducting a case management conference with counsel on November 5, 2018, the circuit court entered a Scheduling Order which set the case for a five-day jury trial beginning January 13, 2020. The Scheduling Order provided that "[p]arties will be added/pleadings amended no later than 12/7/18." The Scheduling Order also set deadlines for expert designations, dispositive motions, and the completion of discovery.

---

[3] Holmes cited the circuit court to *West v. Union Pac. R.R. Co.*, No. 8:17-CV-36, 2017 U.S. Dist. LEXIS 153699 (D. Neb. Sept. 12, 2017), and *Tindall v. Union Pac. R.R. Co.*, No. 17-1221 & 17-1222, 2017 WL 4155428 (C.D. Ill. Sept. 19, 2017).

Union Pacific propounded interrogatories and requests for production of documents on Holmes on August 17, 2018. In response, on October 23, 2018, Union Pacific obtained authorizations from Holmes for the release of her husband's medical records. According to an affidavit of Union Pacific's counsel, Holmes "signed those releases in the capacity of the personal representative of the estate of Robert Holmes." As Union Pacific's counsel sought to use the authorizations Holmes had executed, "at least one medical provider . . . requested that copies of the letters of administration establishing that plaintiff is in fact the personal representative be provided." Union Pacific's counsel sent an e-mail to Holmes' counsel on November 26, 2018, requesting that Holmes' counsel provide the letters of administration, and explaining that the lack of these letters was preventing Union Pacific from conducting necessary pretrial investigation:

> I do not believe that you have yet produced the letters of administration in this case. Can you please provide them promptly? Because of difficulties in obtaining records, we will have to file a motion if I do not receive the letters soon.

Holmes' counsel responded on November 28, 2018. Notably, in that response Holmes' counsel: (1) acknowledged that Holmes had _not_ yet been appointed personal representative (contrary to the representations in her Petition and in the authorizations for release of medical records); (2) advised Union Pacific's counsel that Holmes _would be_ petitioning for appointment; and (3) recognized that the lack of such an appointment would serve as the basis for a motion to dismiss. Holmes' counsel's November 28, 2018, response reads:

> No official estate has been opened. Missouri allows estates to be opened for 2 years after death.[4] FELA allows for claims three years

---

[4] It is unclear why Holmes' counsel considered it to be helpful that "Missouri law allows estates to be opened for 2 years after death." According to the Petition, Robert Holmes died on July 3, 2015 – more than _three years_ before counsel's e-mail. Moreover, as explained above, it appears that counsel was mistaken concerning the time allowed for

after death.  We are going to petition the Court but I know you have to file a Motion to Dismiss.

Although Holmes' counsel promised on November 28, 2018, that "[w]e are going to petition the Court" for letters of administration appointing Holmes as personal representative of her deceased husband's estate, the record does not indicate that Holmes did *anything* to secure such an appointment for the next four months.  Holmes' inaction is particularly glaring given that her counsel had acknowledged that the lack of a valid appointment could serve as the basis for dismissal of the action, and was aware that the lack of a valid appointment was preventing Union Pacific from obtaining medical records critical to its investigation and defense of the case.  Moreover, Holmes' inaction must be evaluated in light of the circuit court's Scheduling Order, which provided that "[p]arties will be added/pleadings amended no later than 12/7/18."

Union Pacific moved to dismiss Holmes' Petition for Damages for lack of standing on December 21, 2018.  In its motion, Union Pacific argued that Holmes lacked standing to prosecute a FELA wrongful death claim because she "was not validly appointed as the personal representative of Robert V. Holmes' estate at the time that this action commenced.  Nor has she since been validly appointed."

Under 16th Circuit Local Rule 33.5.1, Holmes' opposition to the Motion to Dismiss was due ten days after the motion was filed.  Holmes filed no timely opposition.  Instead, on January 25, 2019, Holmes filed a motion for leave to file her opposition to the Motion to Dismiss out of time.  In her motion for leave, Holmes alleged that her counsel "logged the response as being due on January 20, 2019," and "had no inkling that the response date was actually December 31, 2018," until the court's law clerk e-mailed counsel on January 11, "questioning if the Plaintiff

_____

appointment:  Missouri statutes apparently require that an appointment be made within *one year* of the decedent's passing, not two.

7

was going to file a response." Holmes did not explain why she waited until January 25 – fourteen days after the court's inquiry – to file her motion for leave to respond out of time (particularly since counsel had purportedly calendared January 20th as his response deadline). On February 28, 2019, the circuit court granted Holmes' motion to file her opposition to the Motion to Dismiss out of time, "despite Plaintiff's inability to identify and abide by local rule."

Despite the majority's focus on these issues, Holmes' belated opposition to the Motion to Dismiss did not argue that Union Pacific was raising an issue of capacity to sue, which it had waived by failing to plead; nor did she object to the fact that Union Pacific's dismissal motion referred to matters outside the pleadings. Holmes' opposition did not dispute (1) that she had not yet been appointed as the personal representative of her late husband's estate; or (2) that such an appointment was required under 45 U.S.C. § 51. Instead, Holmes argued only that she should be given an opportunity to cure the defect in her petition, and that her belated appointment would relate back to the date on which the petition was filed:

> Instantly, Mrs. Holmes will formalize her position as the Administratrix of the Estate and her appointment as Administratrix should relate back under Rule 55.33(c) which mirrors Federal Rule 15(c) which was, in pertinent part, adopted by Missouri. Or, in the alternative, this Court should allow a filing of an Amended Complaint to more specifically plead the capacity to sue that, pursuant to FELA and the Supreme Court's interpretation thereof, will relate back to the original date of filing.
>
> . . . .
>
> Plaintiff, if leave is granted, and a reasonable time allowed, will perfect her status as Representative of the Estate. If the Court so requires, an Amended Complaint will then be filed that will set forth neither new facts regarding the cause of action nor a different type of cause of action, the Plaintiff will merely set forth the fact that she is indeed the personal representative of the Estate in sufficient detail so as to satisfy the Defendant.

8

Although Holmes' belated opposition to the Motion to Dismiss stated that she would seek appointment as personal representative "instantly," she apparently did nothing to obtain such an appointment for the next two months.

In an order entered on March 4, 2019, the circuit court accepted Holmes' suggestion that she be granted "a reasonable time . . . [to] perfect her status as Representative of the Estate." The March 4th order states that

> [t]he Court, being duly advised in the premises, having reviewed [Union Pacific's Motion to Dismiss], Plaintiff's Suggestions in Opposition, filed January 28, 2019, and Defendant's Reply, filed January 30, 2019, shall stay this Motion, pending a thirty (30) day time period, from the date of this Order, for Plaintiff to file an amended petition with all claims conforming to Missouri and Local Rule. Following the conclusion of the thirty (30) days, the Court will consider all plead[ed] matters, as it relates to the motion to dismiss.

Thus, although the circuit court's Scheduling Order had specified that "[p]arties will be added/pleadings amended no later than 12/7/18," the court granted Holmes until April 3, 2019 – almost four months beyond the original deadline – in which to perfect her status as her deceased husband's personal representative, and file an amended petition reflecting that appointment.

Holmes did not file an amended petition, or secure her appointment as personal representative, by the court's April 3, 2019 deadline. Instead, on April 10, 2019, she filed a Motion to File her Amended Petition Out of Time. In that motion, Holmes acknowledged that she was required under Rule 44.01(b) to establish "excusable neglect" for her failure to file an amended petition by April 3rd. To establish such "excusable neglect," Holmes alleged that, "[o]n March 25, 2019, Plaintiff, Carolyn S. Holmes filed her Application for Letters of Administration with the 7th Judicial District Circuit for Clay County." Holmes alleged, however, that the Clay County Circuit Court did not appoint her as personal representative until April 9, 2019. Holmes' entire argument to establish "excusable neglect" consisted of the following:

9

The Plaintiff prepared and filed the Request for the Grant of Letters of Administration within the time frame set by the Court. However, the Clerk of the Probate Division of the Circuit Court of Clay County took fifteen days to perform a ministerial task of granting the Letters of Administration.

Notably, although factual allegations contained in a motion are not self-proving,[5] Holmes submitted no affidavit or other evidence to substantiate her account of her efforts to obtain appointment as personal representative. It also bears emphasis that Holmes offered no explanation in her April 9th motion why she had waited twenty-one days, out of the thirty-day period provided by the circuit court, before filing her motion in Clay County seeking to be appointed as personal representative.

In opposing Holmes' motion for leave to amend out of time, Union Pacific emphasized that her failure to obtain timely appointment as personal representative had hampered its ability to collect and analyze Robert Holmes' medical records, conduct follow-up discovery from Holmes, and retain its own experts. In an affidavit accompanying its opposition, Union Pacific's counsel explained that

A full set of medical records is crucial to defending an alleged latent injury arising out of a toxic tort, such as this case. For one, what the decedent knew and when he knew it are important questions to know when evaluating whether the claim was timely under the statute of limitations. Accordingly, to properly analyze the question, we must know what symptoms the decedent experienced, what diagnosis the physician made, and what etiology, if any, the physician determined was to blame. Depending on what the records show, the present lawsuit could be untimely under the statute of limitations.

Additionally, the decedent's lung cancer could have been caused by exposures that the decedent did not experience at work. For instance, smoking is a significant risk factor for lung cancer. If the decedent told his physician that he had smoked a significant number of cigarettes per day and that he had done so for many years, then that would be relevant to determining the cause of his lung cancer. This is

---

[5] *See, e.g., St. Louis Bank v. Kohn*, 517 S.W.3d 666, 674 (Mo. App. E.D. 2017) ("A motion is not self-proving, and the movant has the burden of proving the allegations contained therein." (citations omitted)).

10

basic information that Union Pacific is entitled to in defending this case.

Because Holmes' actions had delayed its ability to obtain necessary medical records, Union Pacific requested that, if the court did not dismiss the action, it continue _all_ deadlines in the court's Scheduling Order for 120 days.

It is against this backdrop that the circuit court denied Holmes' motion for leave to amend her petition out of time.

### Standard of Review

Holmes does not challenge the legal basis on which the circuit court dismissed her petition. She acknowledges that she was only entitled to prosecute a FELA action for her husband's wrongful death if she had been appointed as personal representative of his estate, and that she had not been appointed as personal representative until almost a year after filing her petition.

The ruling challenged in Holmes' Point Relied On is the circuit court's refusal to permit her to amend her petition to allege that she had been appointed as the personal representative of her husband's estate. Holmes acknowledges that a circuit court's ruling on a motion to amend a pleading is reviewed for an abuse of discretion. Br. at 10-11 (citing _Sill v. Burlington N. R.R._, 87 S.W.3d 386, 395 (Mo. App. S.D. 2002)).

Holmes' framing of the issue on appeal is mistaken. The circuit court in this case did not deny Holmes leave to amend her petition. To the contrary, in its March 4, 2019, order, the circuit court _granted_ Holmes leave to amend her petition, and gave her thirty days to do so. The circuit court gave Holmes this opportunity in response to the request in her opposition to Union Pacific's Motion to Dismiss, that she be given an opportunity to cure the admitted defect in her existing petition. The circuit court's March 4th order permitted Holmes to amend her petition, despite

11

the fact that the court's Scheduling Order had required amendments to the pleadings to be filed no later than December 7, 2018.

What is actually at issue here is not a refusal to permit an amendment of the petition, but the circuit court's refusal to *extend* the thirty-day period it had given Holmes to amend her petition, based on the court's conclusion that Holmes had failed to demonstrate "excusable neglect" under Rule 44.01(b). The decision whether to permit an untimely filing based on "excusable neglect" is "within the sound discretion of the trial court." *Irvin v. Palmer*, 580 S.W.3d 15, 22 (Mo. App. E.D. 2019); *accord, Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 825 (Mo. 2014).

### "Excusable Neglect"

Rule 44.01(b) provides that, "[w]hen . . . by order of court an act is required or allowed to be done at or within a specified time," the court may extend the period after it expires "where the failure to act was the result of excusable neglect." Holmes' Motion to File Her Amended Petition Out of Time acknowledged that she was required to satisfy this "excusable neglect" standard.

The circuit court did not abuse its discretion in finding no "excusable neglect" in the circumstances of this case.

> "Excusable neglect" is the failure to act "not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident." "Excusable neglect is an action attributable to mishap and not the result of indifference or deliberate disregard."

*State ex rel. Mylan Bertek Pharmaceuticals, Inc. v. Vincent*, 561 S.W.3d 68, 72 (Mo. App. E.D. 2018) (citations omitted). "Importantly, demonstrating excusable neglect is a higher burden than proving an action was not 'recklessly designed to impede the judicial process' as required to show good cause to set aside a default judgment under Rule 74.05(d)." *Irvin*, 580 S.W.3d at 22.

As described in the "Factual Background" section above, Holmes' counsel was aware, before this suit was ever filed, that Holmes needed to be appointed as her deceased husband's personal representative. Despite the fact that Holmes had not been appointed as personal representative, her Petition for Damages falsely claimed that she was the personal representative of her deceased husband's estate, and she executed authorizations for release of medical records in her purported capacity as personal representative. Holmes candidly acknowledged in late November 2018 that she had not yet been appointed personal representative, but stated that "[w]e are going to petition" for an appointment; counsel also expressed his understanding that the lack of an appointment provided Union Pacific with grounds to move to dismiss the petition. Yet, despite being advised of the defect in late November 2018, Holmes apparently did nothing to cure the problem, forcing Union Pacific to file a motion to dismiss in late December 2018. Even in response to that Motion to Dismiss, Holmes did not petition for letters of administration. Instead, in her untimely response to the Motion to Dismiss, she told the court that she would seek an appointment "instantly," and asked that the circuit court allow her a "reasonable time" within which to seek appointment, and thereafter to amend her petition. The court granted her request on March 4, 2019 – thereby extending the deadline for amendment of pleadings specified in the court's Scheduling Order by almost four months.

Yet, despite the fact that she was given thirty days within which to seek an appointment, Holmes waited twenty-one days (until March 25, 2019) before even filing the necessary pleadings to secure an appointment. On appeal, Holmes now claims that "she did not dawdle" because (presumably before March 25th), "[s]he hired local counsel to administer the estate in Clay County, prepared the required pleadings including the application for appointment of a personal representative, and obtained executed renunciations of rights for each of the applicable heirs to her

13

late husband's estate."  But the record does not support her claim that she took _any_ action to obtain appointment as personal representative before March 25, 2019. She provided _no_ information to the circuit court concerning any particular actions she had taken to secure letters of administration, other than to allege that she requested the issuance of letters on March 25th.  Holmes claimed in the circuit court that her March 25th filing alone, and the Clay County Circuit Court's failure to immediately issue letters of administration in response, justified a finding of "excusable neglect."

The record before the circuit court indicated that Holmes had apparently taken _no_ action to seek appointment as personal representative until March 25, 2019 – almost eleven months after this suit was filed; four months after promising Union Pacific's counsel that "[w]e are going to petition the Court"; two months after telling the court she would seek appointment "instantly"; and just ten days before the thirty-day period provided by the circuit court was set to expire.  In these circumstances, the circuit court was fully justified in concluding that Holmes' failure to obtain letters of administration by April 3, 2019, was not the result of an "unexpected or unavoidable hindrance or accident," but was instead the result of Holmes' "carelessness, inattention," and "indifference."  *Vincent*, 561 S.W.3d at 72. The circuit court did not abuse its discretion by finding no "excusable neglect," and in refusing to further extend the deadline for Holmes to file a petition naming a competent party as plaintiff.

Rule 67.06 does not change this result.  Although that Rule states that a circuit court "shall freely grant leave to amend" "[o]n sustaining a motion to dismiss a claim," Holmes _had_ the opportunity to amend her petition here, when the court gave her thirty days within which to cure the admitted defect in her existing pleading.  Although the circuit court's March 4, 2019, order may not have expressly stated that Holmes' existing petition was subject to dismissal, that would have been

14

obvious to everyone, since Holmes had herself conceded that only a duly appointed personal representative may prosecute a FELA wrongful death action and that she had not yet secured such an appointment. The fact that the circuit court did not expressly state, "secure an appointment, or else," is immaterial.

In any event, Rule 67.06 does not guarantee a plaintiff an _automatic_ right to amend.

> Rule 67.06 provides that "[o]n sustaining a motion to dismiss a claim . . . the court shall freely grant leave to amend." Similarly, Rule 55.33(a) states that "leave [to amend] shall be freely given when justice so requires." While both rules stress granting amendments to pleadings liberally, they do not confer an absolute right to file even a first amended petition. Denial of leave to amend is within the sound discretion of the trial court, and its decision will not be disturbed unless there is a showing that such court palpably and obviously abused its discretion. Judicial discretion is abused when the court's ruling is clearly against the logic of the circumstances presented to the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.
>
> . . .
>
> The recognized purpose of allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown when the original pleading was filed without changing the original cause of action. Appellate courts have found no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed.

_Sheffield v. Matlock_, 587 S.W.3d 723, 731 (Mo. App. S.D. 2019) (quoting _Moore v. Firstar Bank_, 96 S.W.3d 898, 903-04 (Mo. App. S.D. 2003) (other citations omitted)).

Circuit courts generally consider four factors in determining whether leave to amend should be granted: "1) the hardship to the moving party that a denial would cause; 2) the reasons for the moving party's failure to include the matter in the original pleadings; 3) the timeliness of the application for leave to amend; and 4) the hardship or injustice that granting leave to amend would cause to the non-moving party." _Concerned Citizens for Crystal City v. City of Crystal City_, 334 S.W.3d 519,

526 (Mo. App. E.D. 2010) (citation omitted).  Here, the circuit court could justifiably find that three of those four factors weighed _against_ permitting Holmes' belated motion to amend:  Holmes offered _no_ reason, much less a credible one, for her failure to secure her appointment as personal representative at an earlier time; her application for leave to amend was untimely both under the court's original Scheduling Order and under the court's March 4, 2019, order; and by the time Holmes sought leave to amend, Union Pacific had been denied access to documents critical to its defense for almost five months, and was seeking an across-the-board 120-day extension of the case management deadlines to compensate for Holmes' delay.  Moreover, the fact that only Robert Holmes' duly appointed personal representative could prosecute this action was not "'unknown when the original pleading was filed,'" _Sheffield_, 587 S.W.3d at 731 (citation omitted).  To the contrary, Holmes' counsel were well aware of the need for an appointment before this suit was ever filed.

In _Sheffield_, the Southern District affirmed the denial of a post-judgment motion for leave to amend in analogous circumstances.  It explained:

> Appellant did not assert or demonstrate to the trial court that his proposed first amended petition presents any factual allegations about Respondent Attorneys' conduct that were overlooked or unknown to him when he filed his initial petition.  Also, Appellant failed to proffer to the trial court any reason why these proposed additional theories of liability were not included in his initial petition.  In the absence of Appellant providing this critical information to the trial court, we cannot say that the trial court abused its discretion in denying him leave to file his first amended petition.
>
> Moreover, the trial court's denial of leave to amend the petition is buttressed by Appellant's lack of timeliness in seeking such leave.  First, as previously noted, Appellant failed to offer the trial court any reason why these additional legal theories against Respondent Attorneys could not have been included in his initial petition.
>
> Second, Appellant failed to offer to the trial court any explanation as to why he did not seek to amend his petition during the fifteen months between the filing of Respondent Attorneys' motion to

16

dismiss and the entry of the trial court's judgment. As demonstrated by Appellant's argument on December 11, 2017, in his response to the motion to dismiss – over twelve months before entry of the trial court's judgment – Appellant was well aware of his potential claims of civil conspiracy and malpractice against Respondent Attorneys. In that response, Appellant argued that Respondent Attorneys were "civil conspirators" and that Collins had "committed malpractice."

Third, Appellant first sought leave to amend his petition only *after* both extended and repeated briefing and argument to the trial court and the trial court's entry of the judgment dismissing his petition. "'Our liberal amendment rules are not meant to be employed as a stratagem of litigation. Rather, the purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading.'"

*Sheffield*, 587 S.W.3d at 731–32 (citations omitted).

Notably, in at least one other case in which the same counsel have litigated this identical issue, the court ordered dismissal where the plaintiff failed to obtain timely appointment of a personal representative. *Reynolds v. Union Pac. R.R. Co.*, No. 8:18CV303, 2019 WL 4933519 (D. Neb. Oct. 7, 2019). The facts in *Reynolds* are striking similar to this case: the plaintiff had not been appointed as personal representative when the suit was filed; the district court gave plaintiff twenty-one days in which to obtain letters of administration; plaintiff did not comply, but "did submit a notice showing that [she] filed an application for appointment of a personal representative" eight days before expiration of the twenty-one day deadline. *Id.* at *1. The court noted that "the railroad in this case raised the standing issue over three months prior to [the magistrate judge's] ruling." *Id.* The district court concluded that, in these circumstances, dismissal without prejudice was warranted:

The Court finds that plaintiff was given ample time to file for the appropriate appointment papers. The Court further finds that the magistrate judge gave deadlines to the plaintiff for such compliance. The plaintiff failed to comply with the court orders or to otherwise respond to the orders. Accordingly, the Court agrees that dismissal without prejudice is an appropriate sanction in this case.

17

*Id.* at *2.

Obviously, when we review for an "abuse of discretion," the question is not whether we would have entered the same order as the circuit court. *See*, *e.g.*, *Frontenac Bank v. GB Invs., LLC*, 528 S.W.3d 381, 390 (Mo. App. E.D. 2017). Instead, "'if reasonable persons may differ as to the propriety of an action taken by the trial court, then it cannot be held that the trial court has abused its discretion.'" *State v. Selph*, 568 S.W.3d 561, 568 (Mo. App. S.D. 2019) (quoting *State ex rel. Wyeth v. Grady*, 262 S.W.3d 216, 219 (Mo. 2008)). While the circuit court's refusal to allow Holmes to amend her petition out of time may have been harsh, I do not believe in the circumstances of this case it was so far "beyond the pale" that we should reverse it.

### Capacity to Sue

The majority opinion holds that Union Pacific's objection to Holmes' standing to prosecute this action actually raised an issue of "capacity to sue," which Union Pacific waived by failing to assert the issue in its answer.

But Holmes has <u>never</u> made these arguments, either in the circuit court, nor on appeal.[6] Rather than raising procedural objections, Holmes responded to Union Pacific's standing argument on the merits, conceding that she had not yet obtained the necessary appointment as personal representative, but assuring the court that

---

[6] The majority opinion also complains that Union Pacific erroneously contended that its "standing" argument defeated the circuit court's subject matter jurisdiction. Once again, this is not an issue Holmes has <u>ever</u> raised. In addition, the question whether standing implicates the circuit court's "jurisdiction" has been the subject of inconsistent decisions. In *Schweich v. Nixon*, 408 S.W.3d 769 (Mo. 2013), the Missouri Supreme Court stated that, "[a]lthough sometimes referred to in terms of jurisdiction, . . . the concept of standing is better understood as a matter of justiciability[.]" *Id.* at 774 n.5. Despite the Supreme Court's statement in *Schweich*, however, decisions of this Court have continue to characterize standing issues as "jurisdictional." *See*, *e.g.*, *Stephens Cemetery, Est. 1864, Inc. v. Tyler*, 579 S.W.3d 299, 305 (Mo. App. S.D. 2019); *Chastain v. Geary*, 539 S.W.3d 841, 848 (Mo. App. W.D. 2017); *In re J.D.S.*, 482 S.W.3d 431, 437-38 (Mo. App. W.D. 2016); *Estate of Freebairn*, 481 S.W.3d 555, 558 (Mo. App. E.D. 2015). Union Pacific's reference to standing as a "jurisdictional" issue is certainly understandable.

18

she would promptly do so. The majority opinion is *the first time in this litigation* when it has been argued that Union Pacific's Motion to Dismiss raised an unpleaded (and therefore waived) issue of capacity to sue.

Given that Holmes never argued that Union Pacific was raising a "capacity to sue" argument in a procedurally defective manner, we should not raise the issue on our own, to justify reversal of the circuit court's decision. The fact that Holmes did not raise the capacity-to-sue issue in the circuit court should be enough to foreclose us from considering it here. It is a commonplace that

> [t]he trial court cannot have erred in denying a claim . . . that was never presented to it. An issue that was never presented to or decided by the trial court is not preserved for appellate review. An appellate court will not convict the trial court of error on an issue which was never before it to decide.

*Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. 2002) (citations and internal quotation marks omitted); *accord, e.g.*, *Ferguson v. St. Paul Fire & Marine Ins. Co.*, 597 S.W.3d 249, 263 (Mo. App. W.D. 2019); *Bartsch v. BMC Farms, LLC*, 573 S.W.3d 737, 743 (Mo. App. W.D. 2019); *Fouts v. Regency N. Acquisition, LLC*, 569 S.W.3d 463, 466-67 (Mo. App. W.D. 2018). Generally, non-jurisdictional arguments "are subject to waiver if not raised timely in a responsive pleading or as otherwise permitted by Missouri's rules and case law." *McCracken v. Wal-Mart Stores E., L.P.*, 298 S.W.3d 473, 477 (Mo. 2009) (citations omitted); *accord, Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. 2010) (noting that, since Missouri court's authority to resolve paternity and child custody issues was not a "jurisdictional" question, mother waived her claim that circuit court lacked authority to proceed by failing to timely raise it in the circuit court).

This Court has specifically held that, where a plaintiff responds to a motion to dismiss or for summary judgment on the merits, without arguing that the motion raises an unpleaded affirmative defense, the pleading issue is waived. *Hanff v.*

19

*Hanff*, 987 S.W.2d 352, 357 (Mo. App. E.D. 1998) (where plaintiff failed to object to summary judgment motion on the basis that it raised an unpleaded affirmative defense, but instead "chose to address the substantive merits of the argument," "the issue . . . must be treated as though it had been raised in the pleadings"; citations omitted); *Caldwell v. Lester E. Cox Med. Ctrs.-S., Inc.*, 943 S.W.2d 5, 10 (Mo. App. S.D. 1997) (despite defendants' failure to specifically plead statute of limitations as affirmative defense in their answers, holding that defendants adequately preserved issue when they raised it in motions to dismiss). Under these decisions, Holmes would be foreclosed from raising a pleading issue in this Court.

The fact that Holmes failed to raise this issue in the circuit court leaves Union Pacific in an untenable position. *If* Holmes had made the argument the majority now raises for her, Union Pacific could have moved to amend its answer, to specifically deny Holmes' capacity to sue. This should be reason enough to refuse to consider the issue after-the-fact on appeal. Indeed, prior decisions of this Court have held that a plaintiff cannot argue for the first time on appeal that a dispositive ruling relies on an unpleaded affirmative defense, because if the issue had been timely raised, the circuit court would have been *required* to grant the defendant leave to amend its answer to raise the issue. *Dwyer v. Meramec Venture Assocs., LLC*, 75 S.W.3d 291, 292 n.1 (Mo. App. E.D. 2002) (citing *Rose v. City of Riverside*, 827 S.W.2d 737, 739 (Mo. App. W.D. 1992)); *Armoneit v. Ezell*, 59 S.W.3d 628, 634 (Mo. App. E.D. 2001).

Not only did Holmes not raise the capacity-to-sue issue in the circuit court – she did not raise it *here*. This is a separate, independently sufficient reason preventing this Court from relying on this unmade argument as a ground for reversal. We repeatedly hold that we will not consider issues which are *defectively raised* in an appellant's briefing, "'to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.'"

20

*Wynn v. BNSF Ry. Co.*, 588 S.W.3d 907, 915 (Mo. App. W.D. 2019) (citations omitted); *accord*, *e.g.*, *Hoover v. Hoover*, 581 S.W.3d 638, 640-41 (Mo. App. W.D. 2019). The reasons for our refusal to consider *poorly presented* arguments should apply with even greater force to arguments which the party <u>never</u> made (either well or poorly).

### Consideration of Matters Outside the Pleadings

The majority opinion also emphasizes that Union Pacific relied on matters outside the petition to establish that Holmes had not been appointed as personal representative. Once again, however, Holmes has not challenged Union Pacific's reliance on facts beyond the petition, either in the circuit court or on appeal; indeed, she has admitted throughout that she did not receive letters of administration prior to April 9, 2019. Generally, where a party does not object to consideration of matters outside the pleadings on a motion to dismiss, that issue is considered waived. *See*, *e.g.*, *Lauber-Clayton, LLC v. Novus Props. Co.*, 407 S.W.3d 612, 617 n.5 (Mo. App. E.D. 2013); *Robert T. McLean Irrevocable Trust v. Patrick Davis, P.C.*, 283 S.W.3d 786, 789 (Mo. App. S.D. 2009); *Mitchell v. McEvoy*, 237 S.W.3d 257, 259 (Mo. App. E.D. 2007).

I would also note that Rule 55.27(a), which requires "conversion" of a motion to dismiss to a motion for summary judgment, does not apply here. It <u>only</u> applies if the motion to dismiss asserts "failure of the pleading to state a claim upon which relief can be granted." Rule 55.27(a); *see Johnson v. Lou Fusz Auto. Network, Inc.*, 519 S.W.3d 450, 455 (Mo. App. E.D. 2017) ("The portion of Rule 55[.27(a)] requiring notice to the parties before the court considers matters outside the pleadings expressly applies only to motions to dismiss *for failure to state a claim*." (citation omitted)).

21

## Conclusion

I fully understand and respect my colleagues' reluctance to affirm the circuit court's judgment dismissing Holmes' petition. The judgment will forever bar Carolyn Holmes from litigating her claim that her husband's death was caused by chemical exposures during his work for Union Pacific, and that she is entitled to compensation from Union Pacific for her grievous loss. I am skeptical that I would have entered the same orders as the circuit court, if I were sitting in its place. But the issue on appeal is only whether the circuit court abused *its* broad discretion to grant or deny leave to amend, or to excuse noncompliance with the deadlines the court had imposed. In the circumstances of this case, it cannot fairly be said that no reasonable jurist would have entered the same orders as the circuit court. I would affirm.

_____

Alok Ahuja, Judge